DURFEE et ux. *v.* DUKE.

No. 37.   Argued October 24, 1963.—Decided December 2, 1963.

*August Ross* argued the cause for petitioners.   With him on the briefs was *Harold W. Kauffman.*

*Robert A. Brown* argued the cause and filed a brief for respondent.

*Clarence A. H. Meyer,* Attorney General of Nebraska, filed a brief for the State of Nebraska, as *amicus curiae,* urging reversal.

*Thomas F. Eagleton,* Attorney General of Missouri, and *Joseph Nessenfeld* and *Howard L. McFadden,* Assistant Attorneys General, filed a brief for the State of Missouri, as *amicus curiae,* urging affirmance.

Mr. Justice Stewart delivered the opinion of the Court.

The United States Constitution requires that "Full Faith and Credit shall be given in each State to the . . . judicial Proceedings of every other State."[1] The case before us presents questions arising under this constitutional provision and under the federal statute enacted to implement it.[2]

In 1956 the petitioners brought an action against the respondent in a Nebraska court to quiet title to certain bottom land situated on the Missouri River. The main channel of that river forms the boundary between the States of Nebraska and Missouri. The Nebraska court

---

[1] "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." U. S. Const., Art. IV, § 1.

[2] "The Acts of the legislature of any State, Territory, or Possession of the United States, or copies thereof, shall be authenticated by affixing the seal of such State, Territory or Possession thereto.

"The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.

"Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." Act of June 25, 1948, c. 646, 62 Stat. 947, 28 U. S. C. § 1738.

The progenitor of the present statute was enacted by the First Congress in 1790. 1 Stat. 122.

"The Act extended the rule of the Constitution to all courts, federal as well as state. *Mills* v. *Duryee,* 7 Cr. 481, 485." *Davis* v. *Davis,* 305 U. S. 32, 40.

had jurisdiction over the subject matter of the controversy only if the land in question was in Nebraska. Whether the land was Nebraska land depended entirely upon a factual question—whether a shift in the river's course had been caused by avulsion or accretion.[3] The respondent appeared in the Nebraska court and through counsel fully litigated the issues, explicitly contesting the court's jurisdiction over the subject matter of the controversy.[4] After a hearing the court found the issues in favor of the petitioners and ordered that title to the land be quieted in them. The respondent appealed, and the Supreme Court of Nebraska affirmed the judgment after a trial *de novo* on the record made in the lower court. The State Supreme Court specifically found that the rule of avulsion was applicable, that the land in question was in Nebraska, that the Nebraska courts therefore had jurisdiction of the subject matter of the litigation, and that title to the land was in the petitioners. *Durfee* v. *Keiffer*, 168 Neb. 272, 95 N. W. 2d 618. The respondent did not petition this Court for a writ of certiorari to review that judgment.

Two months later the respondent filed a suit against the petitioners in a Missouri court to quiet title to the same land. Her complaint alleged that the land was in Missouri. The suit was removed to a Federal District Court by reason of diversity of citizenship. The District Court after hearing evidence expressed the view that the land was in Missouri, but held that all the issues had been

---

[3] Throughout this litigation there has been no dispute as to the controlling effect of this factual issue. See *Nebraska* v. *Iowa*, 143 U. S. 359, 370.

[4] This is, therefore, not a case in which a party, although afforded an opportunity to contest subject-matter jurisdiction, did not litigate the issue. Cf. *Chicot County Drainage Dist.* v. *Baxter State Bank*, 308 U. S. 371.

adjudicated and determined in the Nebraska litigation, and that the judgment of the Nebraska Supreme Court was *res judicata* and "is now binding upon this court." The Court of Appeals reversed, holding that the District Court was not required to give full faith and credit to the Nebraska judgment, and that normal *res judicata* principles were not applicable because the controversy involved land and a court in Missouri was therefore free to retry the question of the Nebraska court's jurisdiction over the subject matter. 308 F. 2d 209. We granted certiorari to consider a question important to the administration of justice in our federal system. 371 U. S. 946. For the reasons that follow, we reverse the judgment before us.

The constitutional command of full faith and credit, as implemented by Congress, requires that "judicial proceedings . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." [5] Full faith and credit thus generally requires every State to give to a judgment at least the *res judicata* effect which the judgment would be accorded in the State which rendered it. "By the Constitutional provision for full faith and credit, the local doctrines of *res judicata,* speaking generally, become a part of national jurisprudence, and therefore federal questions cognizable here." *Riley* v. *New York Trust Co.,* 315 U. S. 343, 349.

It is not questioned that the Nebraska courts would give full *res judicata* effect to the Nebraska judgment quieting title in the petitioners.[6] It is the respondent's

---

[5] See note 2, *supra.*

[6] The Nebraska Supreme Court has clearly postulated the relevant law of the State: "This court adheres to the rule that if a court is one competent to decide whether or not the facts in any given pro-

position, however, that whatever effect the Nebraska courts might give to the Nebraska judgment, the federal court in Missouri was free independently to determine whether the Nebraska court in fact had jurisdiction over the subject matter, *i. e.,* whether the land in question was actually in Nebraska.

In support of this position the respondent relies upon the many decisions of this Court which have held that a judgment of a court in one State is conclusive upon the merits in a court in another State only if the court in the first State had power to pass on the merits—had jurisdiction, that is, to render the judgment. As Mr. Justice Bradley stated the doctrine in the leading case of *Thompson* v. *Whitman,* 18 Wall. 457, "we think it clear that the jurisdiction of the court by which a judgment is rendered in any State may be questioned in a collateral proceeding in another State, notwithstanding the provision of the fourth article of the Constitution and the law of 1790, and notwithstanding the averments contained in the record of the judgment itself." 18 Wall., at 469. The principle has been restated and applied in a variety of contexts.[7]

---

ceeding confer jurisdiction, decides that it has jurisdiction, then its judgments entered within the scope of the subject matter over which its authority extends in proceedings following the lawful allegation of circumstances requiring the exercise of its jurisdiction, are not subject to collateral attack but conclusive against all the world unless reversed on appeal or avoided for error or fraud in a direct proceeding. Brandeen v. Lau, 113 Neb. 34, 201 N. W. 665; County of Douglas v. Feenan, 146 Neb. 156, 18 N. W. 2d 740, 159 A. L. R. 569." *Gergen* v. *Western Union Life Ins. Co.,* 149 Neb. 203, 210; 30 N. W. 2d 558, 562.

[7] See, *e. g., D'Arcy* v. *Ketchum,* 11 How. 165; *Knowles* v. *Gaslight & Coke Co.,* 19 Wall. 58; *Hall* v. *Lanning,* 91 U. S. 160; *Cole* v. *Cunningham,* 133 U. S. 107; *Grover & Baker Machine Co.* v. *Radcliffe,* 137 U. S. 287; *Thormann* v. *Frame,* 176 U. S. 350; *Bell* v. *Bell,* 181 U. S. 175; *Andrews* v. *Andrews,* 188 U. S. 14; *National*

However, while it is established that a court in one State, when asked to give effect to the judgment of a court in another State, may constitutionally inquire into the foreign court's jurisdiction to render that judgment, the modern decisions of this Court have carefully delineated the permissible scope of such an inquiry. From these decisions there emerges the general rule that a judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment.

With respect to questions of jurisdiction over the person,[8] this principle was unambiguously established in *Baldwin* v. *Iowa State Traveling Men's Assn.*, 283 U. S. 522. There it was held that a federal court in Iowa must give binding effect to the judgment of a federal court in Missouri despite the claim that the original court did not have jurisdiction over the defendant's person, once it was shown to the court in Iowa that that question had been fully litigated in the Missouri forum. "Public policy," said the Court, "dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties. We see no reason why this doctrine should not apply in every case where one voluntarily appears, pre-

---

*Exchange Bank* v. *Wiley*, 195 U. S. 257; *Old Wayne Life Assn.* v. *McDonough*, 204 U. S. 8; *Chicago Life Ins. Co.* v. *Cherry*, 244 U. S. 25; *Vallely* v. *Northern Fire & Marine Ins. Co.*, 254 U. S. 348; *Grubb* v. *Public Utilities Comm'n*, 281 U. S. 470.

[8] It is not disputed in the present case that the Nebraska courts had jurisdiction over the respondent's person. She entered a general appearance in the trial court, and initiated the appeal to the Nebraska Supreme Court.

sents his case and is fully heard, and why he should not, in the absence of fraud, be thereafter concluded by the judgment of the tribunal to which he has submitted his cause." 283 U. S., at 525–526.[9]

Following the *Baldwin* case, this Court soon made clear in a series of decisions that the general rule is no different when the claim is made that the original forum did not have jurisdiction over the subject matter. *Davis* v. *Davis,* 305 U. S. 32; *Stoll* v. *Gottlieb,* 305 U. S. 165;[10] *Treinies* v. *Sunshine Mining Co.,* 308 U. S. 66; *Sherrer* v. *Sherrer,* 334 U. S. 343.[11] In each of these cases the claim was made that a court, when asked to enforce the judgment of another forum, was free to retry the question of that forum's jurisdiction over the subject matter. In each case this Court held that since the question of subject-matter jurisdiction had been fully litigated in the original forum, the issue could not be retried in a subsequent action between the parties.

In the *Davis* case it was held that the courts of the District of Columbia were required to give full faith and credit to a decree of absolute divorce rendered in Virginia, despite the claim that the Virginia court had lacked jurisdiction because the plaintiff in the Virginia proceedings

---

[9] This decision was adhered to the following year in *American Surety Co.* v. *Baldwin,* 287 U. S. 156. In his opinion for a unanimous Court in that case, Mr. Justice Brandeis said: "The principles of *res judicata* apply to questions of jurisdiction as well as to other issues." 287 U. S., at 166.

[10] The question in *Stoll* was what effect the courts of Illinois must give to the judgment of a federal court sitting in that State. The case, therefore, did not directly involve the Full Faith and Credit Clause of the Constitution, but, like the present case, it involved the federal statute enacted to implement the constitutional provision. 305 U. S., at 170, n. 5. See note 2, *supra*.

[11] See also *Sunshine Coal Co.* v. *Adkins,* 310 U. S. 381, 403; *Jackson* v. *Irving Trust Co.,* 311 U. S. 494.

had not been domiciled in that State. In the course of the opinion the Court stated:

> "As to petitioner's domicil for divorce and his standing to invoke jurisdiction of the Virginia court, its finding that he was a bona fide resident of that State for the required time is binding upon respondent in the courts of the District. She may not say that he was not entitled to sue for divorce in the state court, for she appeared there and by plea put in issue his allegation as to domicil, introduced evidence to show it false, took exceptions to the commissioner's report, and sought to have the court sustain them and uphold her plea. Plainly, the determination of the decree upon that point is effective for all purposes in this litigation." 305 U. S., at 40.

This doctrine of jurisdictional finality was applied even more unequivocally in *Treinies, supra,* involving title to personal property, and in *Sherrer, supra,* involving, like *Davis,* recognition of a foreign divorce decree. In *Treinies,* the rule was succinctly stated: "One trial of an issue is enough. 'The principles of *res judicata* apply to questions of jurisdiction as well as to other issues,' as well to jurisdiction of the subject matter as of the parties." 308 U. S., at 78.

The reasons for such a rule are apparent. In the words of the Court's opinion in *Stoll* v. *Gottlieb, supra,* "We see no reason why a court, in the absence of an allegation of fraud in obtaining the judgment, should examine again the question whether the court making the earlier determination on an actual contest over jurisdiction between the parties, did have jurisdiction of the subject matter of the litigation. . . . Courts to determine the rights of parties are an integral part of our system of government. It is just as important that there should be a place to end

as that there should be a place to begin litigation. After a party has his day in court, with opportunity to present his evidence and his view of the law, a collateral attack upon the decision as to jurisdiction there rendered merely retries the issue previously determined. There is no reason to expect that the second decision will be more satisfactory than the first." 305 U. S., at 172.

To be sure, the general rule of finality of jurisdictional determinations is not without exceptions. Doctrines of federal pre-emption or sovereign immunity may in some contexts be controlling. *Kalb* v. *Feuerstein,* 308 U. S. 433; *United States* v. *United States Fidelity Co.,* 309 U. S. 506.[12] But no such overriding considerations are present here. While this Court has not before had occasion to consider the applicability of the rule of *Davis, Stoll, Treinies,* and *Sherrer* to a case involving real prop-

---

[12] It is to be noted, however, that in neither of these cases had the jurisdictional issues actually been litigated in the first forum.

The Restatement of Conflict of Laws recognizes the possibility of such exceptions:

"Where a court has jurisdiction over the parties and determines that it has jurisdiction over the subject matter, the parties cannot collaterally attack the judgment on the ground that the court did not have jurisdiction over the subject matter, unless the policy underlying the doctrine of res judicata is outweighed by the policy against permitting the court to act beyond its jurisdiction. Among the factors appropriate to be considered in determining that collateral attack should be permitted are that

"(a) the lack of jurisdiction over the subject matter was clear;

"(b) the determination as to jurisdiction depended upon a question of law rather than of fact;

"(c) the court was one of limited and not of general jurisdiction;

"(d) the question of jurisdiction was not actually litigated;

"(e) the policy against the court's acting beyond its jurisdiction is strong." Restatement, Conflict of Laws, § 451 (2) (Supp. 1948). See Restatement, Judgments, § 10 (1942).

erty, we can discern no reason why the rule should not be fully applicable.[13]

It is argued that an exception to this rule of jurisdictional finality should be made with respect to cases involving real property because of this Court's emphatic expressions of the doctrine that courts of one State are completely without jurisdiction directly to affect title to land in other States.[14] This argument is wide of the mark. Courts of one State are equally without jurisdiction to dissolve the marriages of those domiciled in other States. But the location of land, like the domicile of a party to a divorce action, is a matter "to be resolved by judicial determination." *Sherrer* v. *Sherrer*, 334 U. S., at 349. The question remains whether, once the matter has been fully litigated and judicially determined, it can be retried in another State in litigation between the same parties. Upon the reason and authority of the cases we have discussed, it is clear that the answer must be in the negative.

It is to be emphasized that all that was ultimately determined in the Nebraska litigation was title to the land in question as between the parties to the litigation there. Nothing there decided, and nothing that could be decided in litigation between the same parties or their privies in Missouri, could bind either Missouri or Nebraska with respect to any controversy they might have, now or in the future, as to the location of the boundary between them, or as to their respective sovereignty over the land in question. *Fowler* v. *Lindsey*, 3 Dall. 411; *New York* v.

---

[13] In two previous cases the Court has expressly left open the question of the applicability of the rule of jurisdictional finality to cases involving real property. See *Stoll* v. *Gottlieb*, 305 U. S., at 176; *United States* v. *United States Fidelity Co.*, 309 U. S., at 514.

[14] See *Fall* v. *Eastin*, 215 U. S. 1; *Carpenter* v. *Strange*, 141 U. S. 87, 105–106; *Olmsted* v. *Olmsted*, 216 U. S. 386.

*Connecticut,* 4 Dall. 1; *Land* v. *Dollar,* 330 U. S. 731, 736–737.  Either State may at any time protect its interest by initiating independent judicial proceedings here.  Cf. *Missouri* v. *Nebraska,* 196 U. S. 23.[15]

For the reasons stated, we hold in this case that the federal court in Missouri had the power and, upon proper averments, the duty to inquire into the jurisdiction of the Nebraska courts to render the decree quieting title to the land in the petitioners.  We further hold that when that inquiry disclosed, as it did, that the jurisdictional issues had been fully and fairly litigated by the parties and finally determined in the Nebraska courts, the federal court in Missouri was correct in ruling that further inquiry was precluded.  Accordingly the judgment of the Court of Appeals is reversed, and that of the District Court is affirmed.

*It is so ordered.*

MR. JUSTICE BLACK, concurring.

Petitioners and respondent dispute the ownership of a tract of land adjacent to the Missouri River, which is the boundary between Nebraska and Missouri.  Resolution of this question turns on whether the land is in Nebraska or Missouri.  Neither State, of course, has power to make a determination binding on the other as to which State the land is in.  U. S. Const., Art. III, § 2; 28 U. S. C. § 1251 (a).  However, in a private action brought by these Nebraska petitioners, the Nebraska Supreme Court has held that the disputed tract is in Nebraska.  In the present suit, brought by this Missouri respondent in Missouri, the United States Court of Appeals has refused to be bound by the Nebraska court's judgment.  I concur in

---

[15] The alternative of a negotiated settlement of any dispute between the States over the location of the boundary would also always be available.  See U. S. Const., Art. I, § 10.

today's reversal of the Court of Appeals' judgment, but with the understanding that we are not deciding the question whether the respondent would continue to be bound by the Nebraska judgment should it later be authoritatively decided, either in an original proceeding between the States in this Court or by a compact between the two States under Art. I, § 10, that the disputed tract is in Missouri.