**Ralph A. JOHNSON**

v.

**Hayes McDOLE.**

**Civ. A. No. 74–1106.**

United States District Court, W. D. Louisiana, Shreveport Division.

June 5, 1975.

Sydney B. Nelson, Pugh & Nelson, Shreveport, La., Frederick L. Hilger, Eureka, Cal., for plaintiff.

Roland J. Achee, Nelson & Achee, Ltd., Shreveport, La., for defendant.

## OPINION

STAGG, District Judge.

### STATEMENT OF THE CASE

Ralph A. Johnson sues in this Court for enforcement of a judgment for $100,000 against Hayes McDole, entered in the Superior Court of California, Humboldt County, on January 28, 1974. The California judgment was rendered against McDole pursuant to a cross-

claim filed by Johnson in the suit entitled Martin Rovai Jr., et al v. Ralph A. Johnson (Docket No. 52,442).

Admitting that he has not paid the judgment in question, McDole asserts in his answer to this suit: (a) that the Superior Court of California was without jurisdiction to decide the case; (b) that the judgment is subject to collateral attack in California and elsewhere because the relief granted exceeded the prayer of the cross-complaint; (c) that the California Code of Civil Procedure prohibits a court of that state from rendering a default judgment unless notice of the application for default is mailed to the defendant or his attorney of record, which allegedly was not done in this case; and (d) that the California judgment is not *res judicata* of matters stated in the complaint as that judgment was silent as to the scope of its coverage. Additionally, (e) defendant has counterclaimed herein against plaintiff for damages for a purported breach of contract or for enforcement of certain promissory notes.

Presently before this Court is a motion for summary judgment on behalf of Ralph A. Johnson. In support thereof he has attached: (1) a certified copy of the judgment rendered by the Superior Court of California, Humboldt County, on the cross-complaint by Ralph A. Johnson against Hayes McDole, et al., No. 52,442; (2) a copy of the Petition for Writ of Mandate in the Court of Appeal of the State of California, First Appellate District, filed on behalf of Hayes McDole, together with all attached pleadings from the Superior Court of the State of California in and for the County of Humboldt; (3) a copy of the Order from the Court of Appeal of the State of California, First Appellate District, denying the Writ of Mandate requested on behalf of Hayes McDole; (4) the writ of execution and Sheriff's return on execution in Superior Court of California, Humboldt County (Docket No. 52,442); and (5) the Sheriff's return showing personal service of the cross-complaint on Hayes McDole on January 12, 1973 (Docket No. 52,442).

## FACTS

On July 9, 1971, Hayes McDole (a resident of Louisiana) sold to Ralph A. Johnson (a resident of California) a black Appaloosa stallion named Cooterville Black Derby for a price of $5,100.40. According to the agreement, Johnson was to pay $1,000 down and the balance in three consecutive installments in the amount of $1,000 each on the twelfth day of each month beginning August 12, 1971 and one final installment of $1,100.-40 due November 12, 1971. For the down payment, Johnson gave a check dated July 9, 1971 drawn on the account of Double JJ Enterprises in the Humboldt National Bank, Sunnybrae Branch, Arcata, California. That check was later returned by the bank with stamped notations, "Account Closed". This check was made good on June 6, 1972. The purchase took place in Las Vegas, Nevada and Johnson subsequently took possession of the horse and transported it to California. McDole retained a security interest in the stallion to the extent of the unpaid balance of the purchase price.

Under the terms of the contract, McDole was to allow Johnson to put the stallion to stud and McDole would execute, as registered owner of the stallion, the necessary papers for filing with the Appaloosa Horse Club, Inc. Upon returning to California, Johnson entered into various contracts for the breeding of mares belonging to area horsemen. Among those with whom he contracted were Mrs. Donna L. Wilson and Martin Rovai Jr.

After the mares had been bred pursuant to the stud contracts Johnson attempted to file the certificates of breeding with the Appaloosa Horse Club, Inc. The horse club informed Johnson and the mare owners that the breeding certificates could not be executed since Johnson was not the record owner of the

stallion. Johnson promptly requested that McDole transfer the record ownership of the stallion to him so that the certificates could be issued. At this point the relationship between McDole and Johnson soured and McDole refused to transfer the record ownership to Johnson.

Mrs. Wilson and Ravai contracted McDole directly concerning the breeding certificates. During the course of their conversations, Vernell Giddens (McDole's agent for the conduct of McDole's horse business) accused Johnson of being a horse thief, saying that Johnson had stolen the Appaloosa stallion.

On June 2, 1972 Wilson and Ravai filed suit against Johnson in the Superior Court of Humboldt County, California, seeking rescission of the stud contracts plus restitution of the consideration furnished by them. On July 11, 1972 Johnson filed a cross-complaint against McDole, Vernell Giddens and other unknown "John Doe" defendants wherein he alleged two causes of action. The first cause of action was for the alleged breach of contract for the purchase of the stallion when McDole failed and refused to transfer the record ownership of the stallion to Johnson so that the breeding certificates could be executed. The second cause of action sounded in tort and was for recovery of damages arising from the slanderous remarks, "He is a thief. He stole the horse", uttered by Giddens to Wilson, Ravai and others. In his cross-complaint Johnson prayed for rescission of the contract to purchase the stallion and for general and exemplary damages totaling $125,000 against all defendants.

McDole subsequently was served with a copy of the cross-complaint in Bossier Parish, Louisiana, where he resides. Later, he and Giddens made a special appearance in the California proceeding through Robert D. Prior of the law firm of Huber & Goodwin, Murray, Cissna & Prior. Prior moved to quash the service on McDole and Giddens on jurisdictional grounds, alleging that McDole and Giddens did not have sufficient contacts with the state of California to allow that state to exercise *in personam* jurisdiction over them. On February 27, 1973 the California Superior Court denied the motion to quash.

McDole and Giddens, through their attorney, then applied to the appropriate California appellate court for a writ of mandate seeking to have the judgment of the Superior Court overturned and service of process quashed. The writ of mandate was denied by the appellate court on April 24, 1973. Thereafter, no further action was taken in the California proceeding on behalf of McDole and Giddens.

On June 21, 1973 Johnson's attorney filed an application for a default judgment on the cross-complaint and mailed a copy of such application to Mr. Prior. Thereafter, on January 29, 1974 a default judgment was rendered against McDole and Giddens for the sum of $100,000.

In an attempt to satisfy his judgment, Johnson had the stallion—which was still in California—seized and sold at public auction in California for $5,000. Now Johnson has filed suit in this Court seeking to have the California judgment made executory in Louisiana.

## CONCLUSIONS OF LAW

### A. JURISDICTION OF CALIFORNIA COURT

Defendant claims that the Superior Court of California was without jurisdiction over him, thus the judgment is not entitled to recognition and enforcement in this state.

The jurisdictional issue was raised and thoroughly litigated in the California Superior and Appellate Courts. This is evidenced by the motion to quash and the subsequent petition for a writ of mandate which are attached to the motion for summary judgment. Because the jurisdictional issue was fully litigated in the California court, this issue may not be relitigated by way of col-

lateral attack in a federal court in Louisiana. Durfee v. Duke, 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963); Fidelity Standard Life Insurance Company v. First National Bank & Trust Company of Vidalia, Georgia, 510 F.2d 272, Fifth Circuit, 1975.

In the *Duke* case, the United States Supreme Court stated:

"From these decisions there emerges the general rule that a judgment is entitled to full faith and credit—*even as to questions of jurisdiction*—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." 375 U.S. at 111, 84 S.Ct. at 245 (Emphasis added).

In line with these authorities, coupled with the jurisdictional hearing which was conducted by the California Court, this Court is foreclosed from allowing McDole to attack the *in personam* jurisdiction of the California Court and full faith and credit must be given in this Court to that Court's jurisdictional findings.

## B. RELIEF GRANTED BY CALIFORNIA COURT

Next, defendant argues that the California judgment is subject to collateral attack in California and elsewhere because the relief granted exceeded the prayer contained in the cross-complaint. In this respect, defendant points to the prayer of the cross-complaint which requests judgment against all defendants in the sum of $125,000. From this, McDole reasons that the maximum relief that could be granted against any one defendant would be $125,000 divided by the number of defendants, or less than $9,000 for each defendant.[1] In other words, McDole claims that the prayer called only for several liability whereas the judgment imposed joint and several liability.

Section 580 of the California Code of Civil Procedure (C.C.C.P.) provides:

"The relief granted to the plaintiff, if there be no answer, cannot exceed that which he shall have demanded in his complaint; * * *"

Section 579, C.C.C.P. provides:

"In an action against several defendants, the Court may, in its discretion, render judgment against one or more of them, leaving the action to proceed against the others, whenever a several judgment is proper."

In 46 Am.Jur.2d, Judgments, § 90, the following language is found:

"The rendition of judgments in actions involving several or joint parties may be controlled by code provisions and practice acts which permit judgments for or against one or more of several plaintiffs or defendants. * * *"

"In the absence of a statutory provision to the contrary, the general rule is that a judgment in a joint action against joint obligors must be a joint one against all of them, and that a judgment in an action against persons severally liable must be several, and not joint. If the obligation is joint and several, the obligee is entitled to either a joint or several judgment." (Footnotes omitted.)

In this case, the allegations of the cross-complaint allege that McDole and Giddens were principal and agent. The cross-complaint further states that each defendant uttered the defaming statements and that each intended to harm the plaintiff thereby, and that each knew the statements to be defamatory. Finally, the second cause of action of the cross-complaint concludes as follows:

"[A]nd by reason thereof, cross-complainant demands exemplary and punitive damages against cross defendants

---

1. In addition to McDole and Giddens, the cross-complaint named twelve other persons as defendants on the cross-claim.

**1202**

and each of them, in the sum of $100,000."

So styled, the complaint alleges that both McDole and Giddens committed the tort complained of and, in addition, alleges that Giddens was the agent of McDole, thus McDole was charged with full knowledge of and responsibility for the acts of Giddens. Under California law, this serves to make them joint tortfeasors and joint tortfeasors are jointly and severally liable. 14 Cal.Jur.3rd, page 738.

As to the other twelve named defendants, the default judgment is silent and no proof was adduced by plaintiff by which to impose liability upon them for the defamatory remarks. Thus, the action as to them was abandoned, leaving only McDole and Giddens as defendants. This being so, this Court cannot conclude that the judgment against McDole and Giddens exceeded the relief demanded by the cross-complaint.

## C. NOTIFICATION OF APPLICATION FOR DEFAULT JUDGMENT

McDole's next argument is that the California Superior Court had no authority to render the default judgment since notice of the application for default was not mailed to the proper person as required by California law. The applicable codal provision is Section 587, C.C.C.P.:

"An application by a plaintiff for entry of default under subdivision (1) or (2) of Section 585 or Section 586 or an application for judgment under subdivision (3) of section 585 shall include an affidavit stating that a copy of such application has been mailed to the defendant's attorney of record, or, if none, to the defendant at his last known address and the date on which such copy was mailed. * * *"

"No application for judgment under the provisions of subdivision (3) of Section 585 shall be heard, and no default under the provisions of subdivision (1) or (2) of Section 585 or Section 586 shall be entered, unless such affidavit is filed. The nonreceipt of such notice shall not invalidate or constitute ground for setting aside any judgment."

The copy of the application for default judgment was sent to Robert Prior. It is defendant's contention that this did not comport with the statute, since Prior was authorized only to make a special appearance to contest the California court's jurisdiction and that his authority ceased as soon as the jurisdictional question was resolved. Therefore, defendant asserts that the copy of the application for default should have been mailed to defendant rather than to Prior.

A careful reading of Section 587 reveals that all that is required to validate the judgment is that an affidavit be filed saying a mailing was made. The validity of the judgment does not depend on any party actually receiving the notice. Indeed, the final sentence of that section provides that the non-receipt of such notice shall not invalidate or constitute grounds for setting aside any judgment.

In this case, there is no contention that the appropriate affidavit was not filed prior to the entry of default. The record reflects that it was filed. The copy of the application was not received by defendant because it was mailed to the wrong person. However, non-receipt of the notice does not invalidate the default judgment. Witkin California Procedure, Second Edition, Volume 4, page 2811. The only procedural prerequisite is the filing of the affidavit. Thus, the attack on the judgment for this reason must fail.

## D. SCOPE OF CALIFORNIA JUDGMENT

Finally, McDole contends that the default judgment was rendered only as to the defamation claim and that its coverage did not include a prayer for rescission of the contract to purchase the stallion. This Court finds itself in agree-

ment with defendant's position on this point.

 The prayer of the cross-complaint asked for "A determination by the Court that said contract has been rescinded and restoration of said consideration paid by cross-complainant." However, no evidence was offered on this point at the default judgment hearing and the judgment rendered contains no language whatsoever that could be interpreted as rescinding the sale of the horse.

The general rule is that all claims that are not disposed of in a judgment are considered to have been rejected. 49 C. J.S. Judgments § 436, p. 865. This means that the California Court rejected Johnson's claim for a rescission of the sale and that he may still be sued for a rescission of the sale or for the balance of the purchase price plus all damages arising out of the breach of the contract.

## E. DEFENDANT'S COUNTERCLAIM

 In answer to the present petition for recognition of the California judgment, McDole has conterclaimed against Johnson seeking to recover the balance of the purchase price called for by the contract plus interest and attorneys fees provided for in the note. Alternatively, McDole prays for all damages proximately caused by the breach of the contract by Johnson.

It is the opinion of this Court that this counterclaim, based as it is on the contract, is not barred by the doctrine of *res judicata* as plaintiff contends. This issue was not passed upon by the California court.

## CONCLUSION

For the reasons hereinabove stated, plaintiff's motion for summary judgment for the relief demanded in the complaint is granted. Plaintiff's motion for summary judgment on the counterclaim by McDole and the motion to strike the request for jury trial on the issues presented by the counterclaim are denied.

 Finally, in the interest of justice and pursuant to the inherent equitable power of the Court, execution of the judgment is hereby stayed until such time as the merits of McDole's counterclaim are heard and determined.

Plaintiff is ordered to submit to this Court a judgment approved as to form by the defendant, and consistent with the foregoing.