731 F.2d 680
 FIRST NATIONAL BANK AND TRUST COMPANY OF WYOMING, as
Personal Representative and Executor of the Estate
of Myrtle M. Forbes, Deceased, Plaintiff-Appellee,
v.
Erik LAWING, Stephen Lawing and Stephen W. Lawing,
Individuals, Defendants-Appellants.
 No. 82-1373.
 United States Court of Appeals,
Tenth Circuit.
 April 6, 1984.
 
 Ward A. White, Guy, Williams, White & Argeris, Cheyenne, Wyo., and Timothy G. Williams, Guy, Williams, White & Argeris, Cheyenne, Wyo., for plaintiff-appellee.
 Ernest W. Halle, Cheyenne, Wyo., Ron Cunningham, and Rex R. Veal, Knoxville, Tenn., for defendants-appellants.
 Before DOYLE, McKAY and LOGAN, Circuit Judges.
 WILLIAM E. DOYLE, Circuit Judge.
 
 
 1
 After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed.R.App.P. 34(a); Tenth Circuit R. 10(e). This cause is therefore ordered submitted without oral argument.
 
 
 2
 The matter before us for review is a declaratory judgment which was issued by the United States District Court for the District of Wyoming by Myrtle Forbes and against Erik Lawing, Stephen Lawing, and Stephen W. Lawing. Myrtle Forbes died during the pendency of the suit and the First National Bank and Trust Company of Wyoming, Executor of the Estate, was substituted as the plaintiff.
 
 
 3
 The relief sought by Myrtle Forbes and now by the Bank is a declaratory judgment that the district court held that a transfer of $30,000 to Myrtle Forbes by her daughter, Jacqueline Lawing, wife of defendant Stephen W. Lawing, was a gift. Lawing had claimed that the money was given to Myrtle Forbes in trust for Lawing's children.
 
 
 4
 This case is not readily determinable because we do not have before us the history that preceded the action in the United States District Court in Wyoming. That history is somewhat complex from a procedural standpoint. It involved several state proceedings in Tennessee, a stay of the state proceedings by the federal district court, a declaratory judgment proceeding in federal court, and finally an appeal by the defendants from that order.
 
 The issues are:
 
 5
 1. Whether the federal district court erred in staying the Tennessee state proceedings.
 
 
 6
 2. Whether the issue of jurisdiction was fully and fairly litigated by the state court in Tennessee, the residence of the defendant.
 
 
 7
 There is a third issue which must be mentioned and that is whether the transfer of $30,000 by Jacqueline Lawing to Myrtle Forbes was a gift, as held by the district court, or a trust, as argued by the Lawings.
 
 
 8
 On July 7, 1977, Stephen Lawing filed a suit against Myrtle Forbes in the Chancery Court for Knox County, Tennessee. Lawing sought a declaratory judgment that the $30,000 which was given by Jacqueline Lawing to Myrtle Forbes was to be held by her in trust for the Lawing children. Mr. Lawing sought jurisdiction over Mrs. Forbes by attaching her share of money received from a previous partition judgment. By order dated July 21, 1977, the court ruled that the attempted attachment was void, and therefore, it dismissed the suit without prejudice for lack of personal jurisdiction.
 
 
 9
 Following a move to Claiborne County, Tennessee, Mr. Lawing filed another suit in the Tennessee Chancery Court for that county. Again he sought to have a trust imposed upon the $30,000. The jurisdictional basis was somewhat different. He sought to obtain jurisdiction under the Tennessee Long-Arm Statute and under a non-resident trustee statute. The Claiborne County Court concluded that it did have jurisdiction. Myrtle Forbes, who had made a special appearance in the action to dispute jurisdiction, appealed to the Court of Appeals of Tennessee. That court held that the record had not been adequately developed and remanded the case on August 10, 1979. Mrs. Forbes neglected to file an answer and Lawing filed a notice of default on December 7, 1979. A hearing was set for December 21, 1979, but Forbes sought and obtained a continuance.
 
 
 10
 On January 4, 1980, Mrs. Forbes filed suit against the Lawings in the United States District Court for the District of Wyoming. She sought a declaratory judgment in regard to the right to the $30,000. As a result of that, this court has the judgment to review.
 
 
 11
 As part of the relief in the Wyoming Federal District Court, Mrs. Forbes sought and obtained a stay of the proceedings in Tennessee. A hearing on that motion was set for February 5, 1980. Lawing's attorney, upon receiving notice of the stay hearing, caused the hearing on his state default judgment motions to be set for that same day, February 5, before the Chancery Court for Claiborne County, Tennessee.
 
 
 12
 Subsequently, on February 5, 1980, a hearing was held on the Lawing motion for default judgment in the Tennessee court. Mrs. Forbes had filed a response to the motion, her counsel failed to appear at the hearing and a default judgment was entered against her. A motion to set aside the default, filed some five months later, was denied.
 
 
 13
 A hearing on Forbes' motion for a stay of the Tennessee proceedings was held on February 5, at approximately 1:00 p.m., in the Federal District Court in Wyoming. The court ruled that it had jurisdiction over the Lawings and ordered a stay of further proceedings in Tennessee.
 
 
 14
 We must rule on the validity of the stay order by the Wyoming court. In substance, the Wyoming court ruled that on February 22, 1982, the trial court held that (1) the issue of personal jurisdiction had not been fully and fairly litigated and, therefore, the Tennessee judgment of default was not entitled to full faith and credit; (2) the Wyoming Federal Court had jurisdiction over the parties; and (3) the $30,000 transfer from Jacqueline Lawing to Myrtle Forbes was, indeed, a gift. The Lawings have, as a result, appealed to this court.
 
 
 15
 First we consider whether the stay of state proceedings issued by the District of Wyoming was a valid order, and we must conclude that it was not.
 
 
 16
 This matter is governed by what is sometimes referred to as the Anti-Injunction Act, 28 U.S.C. Sec. 2283 (1976). This is an act which has considerable history; to a degree at least it goes all the way back to the adoption of the Constitution. Thus, the possibility of the federal government having the unlimited power to enjoin state court proceedings has been a concern throughout the entire history of the United States. And Sec. 2283 owes its existence to this viewpoint. It is designed to prevent the state court from becoming just another trial court, subject to the viewpoint of the federal court. The entire thrust of this is that the federal courts must generally refrain from staying state proceedings in the same case. The Anti-Injunction Act, that is, 28 U.S.C. Sec. 2283, has three exceptions: (1) "except as expressly authorized by Congress"; (2) "where necessary in aid of its jurisdiction"; and (3) "to protect or effectuate its judgments." The statute imposes an absolute ban upon the issuance of a federal injunction against a pending state court proceeding, in the absence of one of the recognized exceptions. * * *." See Mitchem v. Foster, 407 U.S. 225, 228-29, 92 S.Ct. 2151, 2155, 32 L.Ed.2d 705 (1972). Once the federal court has made a determination that one of the exceptions to the anti-injunction statute has been met, the issuance of the injunction is at the discretion of the judge. Commonwealth Edison Co. v. Gulf Oil Corp., 541 F.2d 1263, 1274 (7th Cir.1976).
 
 
 17
 The parties to this proceeding have advanced various arguments based on whether the facts of this case met the "exception" established in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The holding in Younger and the cases which were developed around it have no application to the case at bar. First, Younger and all its progeny reflect the principles of equity, comity, and federalism that a federal judge must consider in determining whether to exercise his discretion by granting the injunction once one of the statutory exceptions has been met. See Mitchum, 407 U.S. 228-31, 242-43, 92 S.Ct. at 2154-56, 2162.
 
 
 18
 It is true that the court in Younger appeared to establish a fourth exception to the anti-injunction statute, which is sometimes called our federalism: "In addition, a judicial exception to the long-standing policy evidenced by the statute has been made where a person about to be prosecuted in a state court can show that he will, if the proceeding in the state court is not enjoined, suffer irreparable damages." Younger, 401 U.S. at 43, 91 S.Ct. at 750. Subsequent cases, however, such as Mitchum, have clarified Younger and limited it as well. The "exception" language of Younger has been abandoned and recent cases speak of Younger in terms of abstention. See, e.g., Middlesex Ethics Comm. v. Garden State Bar Association, 457 U.S. 423, 429-31, 102 S.Ct. 2515, 2524-25, 73 L.Ed.2d 116 (1982).
 
 
 19
 It must be remembered, also, that Younger is restricted to criminal cases and occasionally to civil cases where it has been applied in a limited way. The Court, in its recent decision in Middlesex Ethics Committee v. Garden State Bar Association, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982), in discussing Younger was careful to avoid the implication that Younger applied to all civil cases. It is pointed out in Middlesex that the policies underlying Younger are fully applicable to non-criminal judicial proceedings only when important state interests are involved. Moore v. Sims, 442 U.S. 415, 423, 99 S.Ct. 2371, 2377, 60 L.Ed.2d 994 (1979); Huffman v. Pursue, Ltd., 420 U.S. 592, 604-605, 95 S.Ct. 1200, 1208-09, 43 L.Ed.2d 482 (1975). The importance of the state interest is illustrated by the fact that the non-criminal proceedings bear a close relationship to proceedings criminal in nature, as in Huffman. Thus, proceedings necessary for the vindication of important state policies or for the functioning of the state judicial system also evidence the state's substantial interest in the litigation. Trainor v. Hernandez, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); Juidice v. Vail, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977). Where vital state interests are involved, a federal court should abstain "unless state law clearly bars the interposition of the constitutional claims." Moore, 442 U.S., at 426, 99 S.Ct. at 2379.
 
 
 20
 Obviously the case before us is not governed by Younger, considering as it does here the transfer of $30,000 to Mrs. Forbes, and whether it was a gift, as opposed to the corpus of the trust to be held for others. This does not describe a criminal proceeding nor can it be said that it is quasi-criminal. See Huffman v. Pursue, Ltd., 420 U.S. 592, 604-05, 95 S.Ct. 1200, 1208-09, 43 L.Ed.2d 482 (1975). Similarly it is not akin to any of the civil proceedings wherein the Supreme Court has found the existence of an important state interest. One has to conclude that Younger and Huffman are inapplicable to the present case.[1]
 
 
 21
 Hence, the propriety of the injunction depends on whether one of the three statutory exceptions has been met. Neither the record nor the briefs of the parties reveal any facts which would fit under any of the exceptions.
 
 
 22
 The next question is whether the judgment of the Tennessee court regarding its personal jurisdiction over Myrtle Forbes must be given a preclusive effect. The trial court relying on the language of Durfee v. Duke, 375 U.S. 106, 111, 84 S.Ct. 242, 245, 11 L.Ed.2d 186 (1963), that an issue must be "fully and fairly litigated" before it is entitled to full faith and credit, found that the decision of the Tennessee court was not preclusive. The trial court held without explanation that the matter of personal jurisdiction was not fully and fairly litigated. The record does not support such a conclusion. It is our holding that the trial court's finding is erroneous as a matter of law.
 
 
 23
 When, as here, a party makes an appearance, special or general, to challenge the personal jurisdiction of a court, that party cannot collaterally attack the court's determination of that issue. This rule was unquestionably established in the relatively early decision of Baldwin v. Iowa State Traveling Men's Association, 283 U.S. 522, 51 S.Ct. 517, 75 L.Ed. 1244 (1931). This teaching of Baldwin has been reiterated many times.[2] The Supreme Court's most recent approval was in Insurance Corporation of Ireland v. Compagnie Des Bauxites, 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). There the court said:
 
 
 24
 A defendant is always free to ignore the judicial proceedings, risk a default judgment and then challenge that judgment on jurisdictional grounds in a collateral proceeding. See Baldwin v. Traveling Men's Ass'n, 283 U.S. 522, 525 [51 S.Ct. 517, 517-18, 75 L.Ed. 1244] (1931). By submitting to the jurisdiction of the court for the limited purpose of challenging jurisdiction, the defendant agrees to abide by that court's determination on the issue of jurisdiction: That decision will be res judicata on that issue in any further proceedings. Id., at 524 [51 S.Ct. at 517]; American Surety Co. v. Baldwin, 287 U.S. 156 [53 S.Ct. 98, 77 L.Ed. 231] (1932).
 
 
 25
 Insurance Corp. of Ireland, 102 S.Ct. at 2106.
 
 
 26
 The basic problem with this situation is that Myrtle Forbes made a special appearance to challenge the jurisdiction of the Tennessee court. She even appealed the trial court's determination that it had jurisdiction. In view of this, Mrs. Forbes is unable to attack that determination in a collateral proceeding, in Wyoming or elsewhere.
 
 
 27
 Hence, we are required to reverse the judgment of the district court.
 
 
 28
 It is so ordered.
 
 
 
 [1]
 The Court has found important state interests in enforcement of contempt proceeding, Juidice v. Vail, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); proceedings to safeguard the integrity of public assistance programs, Trainor v. Hernandez, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); custody proceedings involving suspected instances of child abuse, Moore v. Sims, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979); and attorney disciplinary proceedings, Middlesex County Ethics Comm. v. Garden State Bar Association, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982)
 
 
 [2]
 E.g., Durfee v. Duke, 375 U.S. 106, 111, 84 S.Ct. 242, 245, 11 L.Ed.2d 186 (1963); In re Universal Display & Sign Co. v. Del Mar News Agency, 541 F.2d 142, 144 (3rd Cir.1976); 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 4430 (1981)