FLETCHER, Circuit Judge,
dissenting:
The majority frames the central question in this case as “whether the California state courts had preclusive jurisdiction to determine if the state criminal proceedings against Gruntz were excluded from the automatic stay in bankruptcy.” Majority Opinion at 732. For me, the issue is whether we should create a bankruptcy *739 exception to the Rooker-Feldman doctrine, which teaches that federal courts of limited original jurisdiction may not arrogate appellate powers by reviewing the final judgments of competent state courts. See Rooker v. Fidelity Trust, 263 U.S. 413, 415-16, 44 S.Ct. 149, 68 L.Ed. 362 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 486-87, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Because I see no basis for creating such an exception, I would affirm the district court. Accordingly, I respectfully dissent.
I.
The bankrupt, Gruntz, was convicted in Los Angeles County Municipal Court for failing to make child support payments, a crime under state law. The California Court of Appeal affirmed the conviction. Both the prosecution and conviction were indisputably within the normal criminal jurisdiction of the state courts. In the course of hearing the case, the Municipal Court determined that the automatic stay issued by the federal bankruptcy court pursuant to the defendant’s ongoing Chapter 11 bankruptcy proceeding did not apply to the state criminal case before it. See 11 U.S.C. § 362(a)(1).
While I agree with the Municipal Court’s conclusion that the automatic stay did not apply to the case before it, that is not the source of my dissent. Rather, I dissent because I believe that regardless of the merits of the Municipal Court’s judgment, the lower federal courts have no jurisdiction to review that judgment. Federal review of the Municipal Court’s construction of the automatic stay is available only in the Supreme Court of the United States, on writ of certiorari. The Rooker-Feldman doctrine dictates this view.[1] Under Rooker-Feldman,
Federal district courts [including bankruptcy courts] may exercise only original jurisdiction; they may not exercise appellate jurisdiction over state court decisions. This rule arises from the interplay of two jurisdictional statutes: 28 U.S.C. § 1331, which grants district courts original jurisdiction over “civil actions arising under” federal law, and 28 U.S.C. § 1257, which grants the Supreme Court the right to review “final judgments ... rendered by the highest court of a State.” This rule applies even when the state court judgment is not made by the highest state court, and when the challenge to the state court’s actions involves federal constitutional issues.
Dubinka v. Judges of the Superior Court, 23 F.3d 218, 221 (9th Cir.1994) (citations omitted); see Olson Farms, Inc. v. Barbosa, 134 F.3d 933, 936 (9th Cir.1998) (quoting Dubinka). Moreover, for its limitation on lower federal court review to mean anything, “the Rooker-Feldman doctrine applies even where a state court judgment may be in error.” In re Audre, Inc., 216 B.R. 19, 29 (9th Cir. BAP 1997) (citation omitted). Thus, just as Rooker-Feldman deprives lower federal courts of jurisdiction to review state courts’ treatment of federal constitutional issues, it precludes the lower federal courts in this case from reexamining the Municipal Court’s construction of the automatic stay.
II.
This is not to say, however, that there are no recognized exceptions to the Rook-er-Feldman doctrine. Most notably, Rooker-Feldman does not apply “when *740 the state proceedings are considered a legal nullity and thus void ab initio.” In re James, 940 F.2d 46, 52 (3d Cir.1991). The majority invokes this exception here, reasoning that where a state court erroneously proceeds with a case to which the automatic stay ought to apply, the state proceeding is void ab initio and thus subject to collateral attack. It is true that “[a] state court judgment entered in a case that falls within the federal courts’ exclusive jurisdiction is subject to collateral attack in the federal courts.” Gonzales v. Parks, 830 F.2d 1033, 1036 (9th Cir.1987). In such cases, the federal court may indeed declare the state proceeding void ab initio. See Kalb v. Feuerstein, 308 U.S. 433, 438-39, 60 S.Ct. 343, 84 L.Ed. 370 (1940). But to invoke that exception to Rooker-Feldman here is simply to beg the question: do the federal bankruptcy courts have exclusive jurisdiction to interpret the scope of the automatic stay? Implicitly at least, the majority answers this question in the affirmative. It is on this point that the majority and I part company.
The majority cites Kalb v. Feuerstein, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940), to support its holding that Rooker-Feldman does not apply in federal bankruptcy and that state court constructions of the stay are subject to collateral attack in bankruptcy court. Kalb, however, makes it clear that federal courts require an express statutory mandate in order to wield the power of collateral review:
Congress, because its power over the subject of bankruptcy is plenary, may by specific bankruptcy legislation create an exception to that principle and render judicial acts taken with respect to the person or property of a debtor whom the bankruptcy law protects nullities and vulnerable collaterally.... The Constitution grants Congress exclusive power to regulate bankruptcy and under this power Congress can limit the jurisdiction which courts, state or federal, can exercise over the person and property of a debtor who duly invokes the bankruptcy law.... The wisdom and desirability of an automatic statutory ouster of jurisdiction of oil except bankruptcy courts over ... debtors and their property were considerations for Congress alone.
Id. at 438-39 (emphasis added). I do not doubt that Congress could, if it so chose, grant bankruptcy courts exclusive jurisdiction to construe the automatic stay and to nullify other courts’ constructions of the stay. But Congress has not done so. The majority can cite no provision in the Bankruptcy Code granting exclusive jurisdiction to the bankruptcy courts to construe the automatic stay.
In the absence of any express statutory support for its position, the majority attempts to infer support from the fact that the automatic stay plays an important role in federal bankruptcy law. This inference, however, relies on a legal and logical non sequitur. The majority is of course correct to note that Congress has granted original and exclusive jurisdiction to the district courts for all cases in bankruptcy under title 11. See Majority Opinion at 733 (citing 28 U.S.C. § 1334(a)). It is also clear that “[t]he automatic stay is one of the fundamental debtor protections provided in the bankruptcy laws.” H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 340 (1977), reprinted in 1978 U.S.Code Cong. & Admin. News 5963, 6296. I do not agree, however, that the importance of the automatic stay somehow creates an exception to the Rooker-Feldman doctrine by granting bankruptcy courts the exclusive power to interpret its scope. The majority undoubtedly agrees that the protections afforded by the United States Constitution are also of great import. Yet the significance of those protections does not alter the fact that, absent express congressional authorization, Rooker-Feldman bars federal courts from reexamining state courts’ treatment of federal constitutional issues. *741 See Dubinka, 23 F.3d at 221.[2] So too here, the automatic stay’s crucial function in bankruptcy law does not, by itself, justify declaring an exception to Rooker-Feldman.
Congress has not expressly granted federal bankruptcy courts the power to review and nullify other courts’ constructions of the automatic stay. The majority’s attempt to infer such a grant from the general importance of the automatic stay is unpersuasive. Thus, this case does not fall under any exception to Rooker-Feldman.
III.
Although doctrinally flawed, the majority’s position seems to flow from a genuine concern that “[i]f allowed to stand, the decision of the California state courts would ‘substantially infringe the authority’ of the bankruptcy court.” Majority Opinion at 734 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 12(2)). Such concern cannot, of course, create a statutory grant of jurisdiction to review state court judgments if it is not there in the text. I also think it worth noting, however, that the majority’s worries are largely unfounded.
The majority contends that in order to administer bankruptcy estates effectively, bankruptcy courts must have the final say as to which matters fall under their statutory mandate. Otherwise, the majority warns, debtor reorganizations may be undermined by concurrent proceedings in other courts over which the bankruptcy courts have no control. Experience, however, suggests otherwise. In In re Baldwin-United Corp. Litigation, 765 F.2d 343 (2d Cir.1985), for example, the Second Circuit held that “[t]he court in which the litigation claimed to be stayed is pending has jurisdiction to determine not only its own jurisdiction but also the more precise question whether the proceeding pending before it is subject to the automatic stay.” Id. at 347. The Second Circuit did not qualify this holding with a proviso that non-bankruptcy courts’ constructions of the automatic stay were subject to collateral attack in bankruptcy court. Baldwin was decided by the Second Circuit in 1985. Since then, the bankruptcy courts in that jurisdiction give no indication of having been hamstrung by Baldwin. In fact, the Southern District of New York continues to be recognized as “the leading jurisdiction for the filing of ‘mega-cases’ ” in bankruptcy. C.R. Bowles & John Egan, The Sale of the Century or a Fraud on Creditors?: The Fiduciary Duty of Trustees and, Debtors in Possession Relating to the “Sale" of a Debtor’s Assets in Bankruptcy, 28 U. MEM. L. REV. 781, 810 & n.154 (1998).
In short, the concerns animating the majority’s position have simply not been borne out by experience in the wake of In re Baldwin. There is no reason to believe that deferring to the state court’s judgment in this case will produce any more worrisome results. Indeed, a number of other courts have recognized that the bankruptcy court does not, and need not, have the final say when it comes to construing the automatic stay. See, e.g., In re Singleton, 230 B.R. 533 (6th Cir. BAP 1999); In re Taylor, 216 B.R. 366 (Bankr.S.D.N.Y.1998); In re Mann, 88 B.R. 427 (Bankr.S.D.Fla.1988). The results have not been problematic.
IV.
The automatic stay is a creature of federal statute, and exists to effectuate exclusive federal jurisdiction over bankruptcy proceedings. But to say that federal bankruptcy courts must be able to nullify constructions of the automatic stay with which they disagree is to suggest that state courts cannot be relied on to inter *742 pret federal law. Just the opposite is the case. This country was founded in part on the principle that the states would be “constituent and essential parts of the federal government.” THE FEDERALIST NO. 45 (James Madison). As part of that plan, the Supremacy Clause of the United States Constitution requires that state courts, no less than their federal counterparts, faithfully interpret and apply “the Laws of the United States.” U.S. CONST, art. VI. It is in part because of this requirement that Alexander Hamilton could confidently conclude that “the State courts would have a concurrent jurisdiction in all cases arising under the laws of the United States where it was not expressly prohibited.” THE FEDERALIST NO. 82 (Alexander Hamilton).
This is precisely not a case where Congress has expressly prohibited state court jurisdiction. Although bankruptcy proceedings themselves are exclusively federal, the Bankruptcy Code says nothing about which courts have the power to determine whether the automatic stay is applicable. In the absence of any clear statement from Congress, we should not declare an exception to the Rooker-Feld-man doctrine. Because the majority has concluded otherwise, I respectfully dissent.

. General preclusion principles may also dictate this view. See Durfee v. Duke, 375 U.S. 106, 111, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963) (holding that "a judgment is entitled to full faith and credit — even as to questions of jurisdiction — when the second court’s inquiry discloses that those questions have been fully and fairly litigated and fairly decided in the court which rendered the original judgment”). However, because Rooker-Feldman is formally concerned with subject matter jurisdiction, the application of Rooker-Feldman logically precedes the application of preclusion principles. Because I think Rooker-Feld-man sufficient to dispose of this case, I do not reach the question of preclusion.

. The general federal habeas statute, 28 U.S.C. § 2241, is a good example of an express statutory exception to Rooker-Feldman, authorizing federal review of a final state court decision to ensure that deprivations of individual liberty conform with federal constitutional and statutory law. See Young v. Murphy, 90 F.3d 1225, 1230 (7th Cir.1996).