**Martin A. ARMSTRONG, Petitioner**

v.

**SECURITIES AND EXCHANGE COMMISSION, Respondent.**

No. 09–1260.

United States Court of Appeals, District of Columbia Circuit.

April 25, 2012.

Martin A. Armstrong, Fort Dix, NJ, pro se.

Jeffrey Alan Berger, Luis De La Torre, Esquire, Senior Litigation Counsel, Securities and Exchange Commission, Washington, DC, for Respondent.

Before: ROGERS and BROWN, Circuit Judges, and RANDOLPH, Senior Circuit Judge.

### *JUDGMENT*

PER CURIAM.

This case was considered on the record from the Securities and Exchange Commission and on the briefs filed by counsel. It is

**ORDERED** that the petition for review be denied.

In 2006, petitioner Martin Armstrong pled guilty to conspiring to commit securities and wire fraud. He was sentenced in the Southern District of New York to five years in prison and three years of supervised release, and ordered to pay $80,000,001 in restitution. Two years later, Armstrong entered into a civil consent judgment with the Securities and Exchange Commission ("SEC") which permanently enjoined him from violating Section 10(b) of the Exchange Act, SEC Rule 10b–5, and Section 17(a) of the Securities Act, all of which prohibit forms of securities fraud. Shortly after the consent judgment

was finalized, the SEC initiated an administrative proceeding to impose a bar on Armstrong associating with any investment adviser. An administrative law judge issued such a bar and the Commission affirmed. Armstrong petitions for review of this administrative action.

The requirements for such an associational bar are set out in the Advisers Act. Pursuant to that statute, the SEC must show that Armstrong has been "convicted of any offense specified in paragraph (2) or (3) of subsection (e) . . . within ten years of the commencement of the proceedings . . . or is enjoined from any action, conduct, or practice specified in paragraph (4) of subsection (e). . . ." 15 U.S.C. § 80b–3(f). Paragraph (2) of subsection (e) includes, among others, felonies that "involve[ ] the purchase or sale of any security." *Id.* § 80b–3(e)(2)(A). Armstrong's 2006 conviction for conspiracy to commit securities fraud means he satisfies this criterion. Paragraph (4) of subsection (e) also includes injunctions from "engaging in . . . any conduct or practice . . . in connection with the purchase or sale of any security." *Id.* § 80b–3(e)(4). Armstrong also satisfies this criterion since he is enjoined from precisely such conduct, namely violating the Securities and Exchange Acts.

Armstrong attempts to escape these statutory triggers by collaterally attacking his underlying conviction, arguing that the convicting court lacked jurisdiction. He cannot raise such an argument in this proceeding. *Blinder, Robinson & Co. v. SEC,* 837 F.2d 1099, 1108 (D.C.Cir.1988) (holding that "an attack on the validity of [an underlying] proceeding" that could have been raised in the convicting jurisdiction "is doomed to fail"); *Elliott v. SEC,* 36 F.3d 86, 87 (11th Cir.1994) (per curiam) (refusing in an analogous follow-on proceeding to "entertain the collateral attack on the criminal conviction"). The fact that Armstrong's collateral attack purports to question the convicting court's jurisdiction does not, as he insists, require a different result. Armstrong had the opportunity to contest that jurisdiction in the convicting court, which means he "may not . . . reopen that question in a collateral attack." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702 n. 9, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982); *see also Durfee v. Duke,* 375 U.S. 106, 111, 114, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963).

Finally, before imposing this sort of associational bar, the SEC must also determine, in its discretion, that doing so would serve the public interest. 15 U.S.C. § 80b–3(f); *Steadman v. SEC,* 603 F.2d 1126, 1140 (5th Cir.1979) (setting out factors to consider); *see Kornman v. SEC,* 592 F.3d 173, 187–88 (D.C.Cir.2010). Armstrong did not specifically object before the Commission to its evaluation of the *Steadman* factors, so he has waived such an argument. 15 U.S.C. § 80b–13(a). Even if Armstrong's incarceration presented "reasonable grounds for failure" to raise these specific factors before the Commission, *id.,* his objection would fail. He argues that the Commission improperly relied on the $80 million he owes in restitution in evaluating both the egregiousness of his conduct and the "likelihood that [his] occupation will present opportunities for future violations," *Steadman,* 603 F.2d at 1140, because he will receive credit towards that amount for payments made by third parties. But the SEC did not abuse its discretion when it evaluated the debt as it currently stands and determined that it, combined with Armstrong's career as a securities and commodities trader, would present him with motive and opportunity to violate the law again. This is an especially reasonable conclusion since Armstrong "still thinks he did nothing wrong." *Geiger v. SEC,* 363 F.3d 481, 489

(D.C.Cir.2004); *see, e.g.,* Letter from Martin A. Armstrong to Thomas Sjoblom, Esq. (May 15, 2008) ("There was no false statements [*sic*] to clients. There was no default. There was no refusal by me to pay anyone. There was no crime!"). Of course, if the district court credits payments by other parties against the restitution Armstrong was ordered to pay, Armstrong may, as the SEC suggests, file an application to lift the associational bar. *See* 17 C.F.R. § 201.193(d)(2); Resp't Br. 26.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing *en banc. See* Fed. R.App. P. 41(b); D.C.Cir. Rule 41(a)(1).