OPINION OF THE COURT
Simons, J.
The provisions of the Agriculture and Markets Law require all milk dealers in New York to be licensed. The Commissioner of the Department of Agriculture and Markets may deny an application for a new license or an application to continue or *53 extend an existing one if he finds by a preponderance of the evidence, after a hearing, one or more of the following: (1) that the applicant is not qualified by character, experience, financial responsibility or equipment to conduct the proposed business, (2) that issuance of the license will tend to destructive competition in a market already adequately served or (3) that issuance of a license is not in the public interest (Agriculture and Markets Law § 258-c). The Commissioner may also deny an application or revoke or suspend a license already granted for any one of several specific reasons listed in the statute, including a finding that the dealer has been a party to a combination to fix prices contrary to law (id. § 258-c [f]) or that the applicant or licensee has been convicted of a felony (id. § 258-c [i]). A partnership or corporation application may be denied if an individual holding a position of power or control has been found responsible for such acts (id. § 258-c [j]).
Petitioner Farmland Dairies was convicted of price rigging in New Jersey while an application to extend its license was pending in New York. Under New York law, the New Jersey judgment would be admissible in the New York proceedings, it would be conclusive proof of the underlying facts (see, S. T. Grand, Inc. v City of New York, 32 NY2d 300) and it would, without more, warrant denial of petitioners’ application. The judgment contained a condition, however, providing that it was not to be used for evidential purposes in any civil proceeding. The issue presented on this appeal is whether the full faith and credit clause of the Federal Constitution mandates recognition of that condition to bar use of the New Jersey judgment in the New York administrative proceeding. We hold that it does.
Petitioner Farmland Dairies is a closely held New Jersey dairy manufacturing corporation which holds New York licenses to purchase and sell raw milk in this State. Petitioners Fair Lawn Dairies, Inc., and Fairdale Milk Company are its wholly owned New Jersey-based subsidiaries. Fair Lawn is licensed to sell and distribute packaged milk in Westchester, Rockland and Orange Counties, and to sell processed milk products in other areas in the State. In 1979, following acquisition of a Long Island milk dealer, Fair Lawn applied to the Department of Agriculture and Markets for an extension of its New York dealer’s license to Nassau and Suffolk Counties. While that application was still pending, Farmland and various other New Jersey milk dealers were charged by the Attorney-General of New Jersey with criminally conspiring to rig bids for the sale of dairy products in that State in violation of the New *54 Jersey antitrust laws. A comprehensive plea bargain was made to settle the action by which, inter alia, each defendant agreed to plead guilty to the charge, pay a $50,000 fine, and receive back all documents previously obtained by the prosecution during the course of the investigation. Of particular significance here, the Attorney-General also agreed that as a condition to the pleas defendants’ motions pursuant to rule 3:9-2 of the New Jersey Court Rules Governing Criminal Practice would be granted. Rule 3:9-2 provides that “for good cause shown the court may, in accepting a plea of guilty, order that such plea not be evidential in any civil proceeding.” The Trial Judge incorporated that specific direction in the final judgment of conviction.
In May 1981, the Department gave notice to petitioners of a hearing to consider whether (1) Farmland’s New York license should be revoked because of its antitrust violations in New Jersey and the participation of one of its officers in that activity, and (2) whether Fair Lawn’s extension application should be denied for the same reasons, plus certain alleged violations of conditions attached to a prior extension of Fair Lawn’s license to Westchester County and the effect of the further extension Fair Lawn was seeking would have on competition in the Nassau/ Suffolk market. An evidentiary hearing was held in which testimony was given on the merits, both for and against Fair Lawn’s extension application, and a certified copy of Farmland’s New Jersey conviction was received in evidence. At the conclusion of the hearing, the hearing officer recommended that Farmland’s license not be revoked and that Fair Lawn’s extension application be granted. Respondent Commissioner of the Department of Agriculture and Markets rejected that recommendation. Instead, he denied the extension application, relying on the evidence of Farmland’s New Jersey conviction, the nature of the market in Nassau and Suffolk Counties and Fair Lawn’s history of concentrating sales to large supermarket chains which he found were already adequately served. The Commissioner refrained from revoking all of petitioners’ existing licenses on condition that they file periodic reports on their New York bidding activities.
Petitioners then instituted this proceeding to obtain extension of Fair Lawn’s license to Nassau and Suffolk Counti’es, to annul the reporting requirements and, insofar as the order may be construed as barring further extension applications for a specified time, to annul that provision. They claim that the order must be vacated because it was based improperly upon consideration of the New Jersey judgment and because it is not supported by a preponderance of the evidence. Respondent contends *55 that he properly considered the New Jersey judgment but that even if he should not have considered it, his decision was based on other permissible grounds and supported by the evidence.
Under our Federal structure, each State has its own judicial system capable of adjudicating the rights and responsibilities of the parties brought before it. Given this structure, there is always a risk that two or more States will exercise their power over the same case or controversy with the uncertainty, confusion, and delay that necessarily accompany relitigation of the same issue. The purpose of the full faith and credit clause was to avoid such conflicts and weld the independent States into a Nation (Underwriters Assur. Co. v North Carolina Life, 455 US 691, 704; Sherrer v Sherrer, 334 US 343, 355; see generally, Reese and Johnson, The Scope of Full Faith and Credit to Judgments, 49 Colum L Rev 153). Its provisions require that the public acts, records and judicial proceedings of each State shall be given full faith and credit in every other State (US Const, art IV, § 1). The doctrine does not make a foreign State judgment a judgment in the forum State (Riley v New York Trust Co., 315 US 343). Before that occurs and a locus remedy may be obtained, an action must be brought and a judgment entered on the foreign judgment in the forum State. The doctrine establishes a rule of evidence, however, which requires recognition of the foreign judgment as proof of the prior-out-of-State litigation and gives it res judicata effect, thus avoiding relitigation of issues in one State which have already been decided in another (see, Parker v Hoefer, 2 NY2d 612, cert denied 355 US 833; Durfee v Duke, 375 US 106; Magnolia Petroleum Co. v Hunt, 320 US 430, 438; Riley v New York Trust Co., supra). The rule is not absolute; the judgment of one court is conclusive and binding in another State only if the first court had jurisdiction to render it (Underwriters Assur. Co. v North Carolina Life, supra, pp 704-705; Durfee v Duke, 375 US 106, 110, supra), but if the foreign court had jurisdiction, as New Jersey did here, the courts of every other State must give it the same credit, validity and effect as it has in the State which rendered it and this is so even though suit could not have been maintained on the cause of action in the forum State (see, eg., Parker v Hoefer, supra [Vermont judgment for alienation of affections]) or the judgment is based upon a mistake of law (see, eg., Fauntleroy v Lum, 210 US 230 [action on gambling debt]). Whatever could have been pleaded in opposition to the judgment in the foreign State may be pleaded in opposition to it in the forum State, but the judgment can be given no less force or effect than it has in the *56 State rendering it (Parker v Hoefer, supra, p 616; Matter of Johnson, 301 NY 13, 20; Durfee v Duke, supra, p 109).
New Jersey’s highest court has decided the effect to be given in that State to a judgment such as petitioners’. In Gallo Asphalt Co. v Sagner (71 NJ 405, 365 A2d 932) State officials administratively debarred plaintiffs from bidding on public contracts because they had previously pleaded guilty to conspiring to fix bids and other related charges. The judgment entered on their pleas contained the same limitation found in petitioners’ judgment preventing evidential use of it in any pending or future civil proceeding. Notwithstanding this condition, the New Jersey Department of Transportation relied on the judgment to debar plaintiff from bidding on public works contracts. In an action to review that determination, the New Jersey Supreme Court held that the administrative proceeding was a civil proceeding and that neither plaintiffs’ pleas nor the judgment entered on them could be considered in support of an order debarring them from bidding on future contracts. The full faith and credit clause requires us to give Farmland’s judgment the same effect in New York.
The Appellate Division held that the evidence was admissible on several grounds. First, it held that the judgment is a criminal judgment and that the full faith and credit clause does not require recognition of foreign criminal judgments. It also analogized the proceeding to those in which the forum State recognized a judgment of conviction although the defendant had subsequently been pardoned by the executive of the convicting State (see, Thrall v Wolfe, 503 F2d 313; Groseclose v Plummer, 106 F2d 311). It held that full faith and credit applied only to the res judicata effect of the judgment and that the Commissioner had used it permissibly only as prima facie evidence of bad character, not to prove guilt conclusively. Finally, it held that because the restriction against using the judgment was only a court rule that should not have been incorporated in it, the issue was really one of choice of law in which New York’s interests prevailed.
The courts have stated as a general proposition that criminal judgments are not entitled to full faith and credit because no State is bound to enforce the penal laws of another State or to punish a person for a wrong committed against it (see, Nelson v George, 399 US 224). The rationale for this exception to the constitutional requirement is that each sovereignty is free to determine what conduct shall be proscribed within its jurisdiction and the wrong committed by violating such proscription is *57 local, not transitory. The penal laws within the exception are those which seek to redress wrongs done to the public generally (Huntington v Attrill, 146 US 657, 668). Thus, States have denied recognition to foreign judgments relied upon by one State to recover penalties assessed against a criminal defendant found within their boundaries (see, e.g., Wisconsin v Pelican Ins. Co., 127 US 265, 290; but cf. Milwaukee County v White Co., 296 US 268). The exception has no application in this case because New York is not being asked by the State of New Jersey to enforce its penal laws. Quite the contrary, respondent wishes to recognize the New Jersey judgment as evidence of the misconduct underlying it.
Nor do we find the pardon cases cited by the Appellate Division persuasive. In those cases the courts held judgments of conviction valid and subsisting, notwithstanding the fact that the defendant had been pardoned, because the pardons, by their terms, only abolished the restrictions on defendants’ liberty and civil rights. They did not extinguish the judgments and thus the judgments could be used to establish the prior convictions. Consistent with constitutional requirements, the judgments in each case were given the same effect in the forum State as they had in the foreign State. That rule is incorporated into New York law by statute (see, Penal Law § 70.06 [1] [b] [i]; § 70.10 [1] [b] [iii]).
The circumstances in the present appeal are closer to those in enhanced sentencing cases in which the predicate felony is a foreign State youthful offender adjudication which is entered on the condition that it may not be used as an adult conviction. The condition of those judgments has been recognized and given the same effect in New York as it has in the rendering State (see, People v Burgos, 98 Misc 2d 923; see also, People v Carpenteur, 21 NY2d 571). Also similar are the facts in Matter of Braunstein v Board of Examiners (90 AD2d 565, read on other grounds on rearg 92 AD2d 1061) which involved the same New Jersey court rule as the present case. In that matter, the condition did not restrict the State from using the judgment evidentially, only third parties. The Appellate Division gave the judgment the same effect in New York, holding that inasmuch as New Jersey could use the judgment for evidence of the underlying felony, the State of New York was entitled to the same right and could use it in an administrative hearing to revoke petitioners’ New York license.
Moreover, we see no distinction to be drawn between using the judgment as prima facie evidence of the underlying facts or as *58 conclusive proof of them. The judgment provides that it shall not be used for evidential purposes at all. Respondent cannot recognize one portion of the judgment and ignore the remainder, nor can he avoid the constitutional requirement by assigning some lesser evidentiary weight to it. Whether the limitation should have been incorporated in the judgment is not for us to say. The fact is that the New Jersey court put it there and we are required to recognize it.
Finally, we disagree that choice of law considerations permit use of the judgment. It is not infrequent in litigation involving multistate contacts or parties residing in different States for conflicting statutory or common-law rules to be implicated in the litigation. The forum State is free to resolve those conflicts and choose the applicable law based upon an evaluation of the State contacts with the parties and the transactions. No constitutional problems arise unless the choice is arbitrary or fundamentally unfair (Allstate Ins. Co. v Hague, 449 US 302, 308; Alaska Packers Assn. v Industrial Acc. Commn., 294 US 532). This case concerns a judgment, however, and the States enjoy no such flexibility in deciding whether they will recognize foreign judgments (see, Allstate Ins. Co. v Hague, supra, p 308, n 10). There are some rare cases, other than those involving penal laws, in which the national policy of interstate comity has given way to paramount local interests resulting in a State’s refusal to recognize a foreign judgment (see, Williams v North Carolina, 325 US 226; see also, Alaska Packers Assn. v Industrial Acc. Commn., supra, p 546, and cases cited thereat), but this is not one of them. New York has an abiding interest in the character of its licensees, of course, and respondent may establish petitioners’ past misconduct in New Jersey at its administrative hearings. But we do not perceive any overriding interest in the State of New York which would permit its agencies to rely on the New Jersey judgment to prove the misconduct but disregard the condition in it which induced the plea on which the judgment is based. This State is bound by the bargain just as New Jersey is and must give the judgment the same effect as New Jersey courts give it (cf. Santobello v New York, 404 US 257).
Because the evidence before respondent included the New Jersey judgment and he relied on it in his findings and conclusions, his order must be annulled and the matter remitted for a redetermination of the merits without considering that evidence. Accordingly, the judgment of the Appellate Division should be reversed, with costs, and the matter remitted to *59 Supreme Court with directions to remand to respondent for reconsideration.
Chief Judge Wachtler and Judges Jasen, Meyer, Kaye and Alexander concur.
Judgment reversed, etc.