**Anthony G. HARRIS, Receiver of Mobile Insurance Company, Plaintiff/Appellee,**

**v.**

**Marvin POOLE, Individually and d/b/a Mobile Housing Insurance Agency, Inc., and alternatively Mobile Housing Insurance Agency, Inc., Defendants/Appellants.**

Court of Appeals of Tennessee, Western Section, at Jackson.

Dec. 3, 1984.

Application for Permission to Appeal Denied by Supreme Court April 1, 1985.

Maurice J. McGehee, Memphis, for plaintiff-appellee.

Henry V. Sutton and Mark W. Garrett, of Sutton, Wilson & Garrett, Memphis, for defendant-appellant Marvin Poole.

TOMLIN, Judge.

This appeal arises from a suit by a Texas resident seeking to enforce in Tennessee a Texas judgment obtained against a non-resident, pursuant to the Texas "long-arm" statute. The action was brought prior to the adoption of the Uniform Enforcement of Foreign Judgments Act. Plaintiff, the receiver of a Texas insurance company, ("Company") sued defendant, a resident of Shelby County, Tennessee, in Texas. Service of process was had on defendant through the Texas "long-arm" statute. Defendant unsuccessfully challenged the jurisdiction of the Texas court by a special appearance. After obtaining a judgment on the merits, which was not contested in Texas, plaintiff filed suit in Tennessee to enforce it. Following an evidentiary hearing on the question of jurisdiction, the Circuit Court of Shelby County entered judgment against defendant on the Texas judgment. The sole issue presented by this appeal is whether or not the Texas court had obtained personal jurisdiction over defendant so as to require Tennessee to give full faith and credit to the Texas judgment. We affirm the judgment of the trial court.

While we reach the same result as the trial court, we do so for different reasons and by a different method. Inasmuch as we are of the opinion that the trial judge was in error in the procedure that he followed, we feel constrained to address it here. As noted, after having been sued in Texas and served through the Texas "long-arm" statute, defendant made a special appearance in the Texas court to challenge the *in personam* jurisdiction of that court. After an evidentiary hearing in Texas, the Texas court found that it had personal jurisdiction over the defendant. Defendant chose not to appeal the Texas trial court's ruling as to jurisdiction and made no further effort to defend the case on the merits. Following the filing of suit by the Texas plaintiff to enforce his Texas judgment in Tennessee, defendant again raised the question whether Texas had *in personam* jurisdiction. Our single fault with the action of the trial court lies not with the conclusion that he reached, but with the holding of an evidentiary hearing below on the question of *in personam* jurisdiction in Texas.

Article IV § 1 of the United States Constitution requires that "full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state." The application of this constitutional provision to the interworkings of the judicial systems of our fifty states is amply stated in 47 Am.Jur.2d, *Judgments*, § 1226 (1969):

The effect of the full faith and credit clause of the United States Constitution, and of the Act of Congress implementing

it, is to make the local common-law doctrine of res judicata a part of the national jurisprudence and operating throughout the federal system, by requiring that the doctrine of res judicata be applied in one state to a judgment rendered in another state to the same extent as it is applied in the state of its rendition. Hence, the doctrine of res judicata may be applied to a judgment rendered in one state where the action in the second state involves the same subject matter and cause of action, or the same issues determined in the former action. In the former case, the judgment rendered in the one state operates to bar further prosecution of the same cause of action in another state; in the latter case, it operates to bar a second determination of the same issues in another state. In the latter respect, it has been specifically held that the collateral estoppel division of res judicata is included within the full faith and credit mandate.

In the case at bar, the parties concede that defendant made a special appearance in Texas to contest the jurisdiction of the Texas court. A certified copy of the order of the Texas trial court dealing with defendant's special appearance was entered in the record in this cause. This order reads in part as follows:

[T]he Plaintiff herein having appeared by and through his attorney of record and Defendant Marvin Poole having appeared by and through his attorney of record, the court proceeded to hear such matter and after reviewing the case file, considering the evidence and arguments presented by counsel for Plaintiff and Defendant and after considering the applicable law the court finds ... that the assumption óf jurisdiction by this court over the person of Defendant Marvin Poole does not offend traditional notions of due process and the court is therefore of the opinion that the court has in personam jurisdiction over said Defendant Marvin Poole....

The application of the doctrine of res judicata to questions of jurisdiction over the person was clearly established in *Baldwin v. Iowa State Traveling Men's Association*, 283 U.S. 522, 51 S.Ct. 517, 75 L.Ed. 1244 (1931). In *Baldwin* it was held that a federal court in Iowa was required to give binding effect to a judgment of a Missouri federal court, notwithstanding the claim that the original court did not have jurisdiction over the person of the defendant, once it was established in the Iowa court that that question had been fully litigated in Missouri. Said the court:

Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest; and that matters once tried shall be considered forever settled as between the parties. We see no reason why this doctrine should not apply in every case where one voluntarily appears, presents his case and is fully heard, and why he should not, in the absence of fraud, be thereafter concluded by the judgment of the tribunal to which he has submitted his cause.

*Id.* at 525–26, 51 S.Ct. at 518.

In *Stoll v. Gottlieb*, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938), the rationale for this doctrine of jurisdictional finality was stated in this way:

We see no reason why a court in the absence of an allegation of fraud in obtaining the judgment, should examine again the question whether the court making the earlier determination on an actual contest over jurisdiction between the parties, did have jurisdiction of the subject matter of the litigation.

. . . .

Courts to determine the rights of parties are an integral part of our system of government. It is just as important that there should be a place to end as that there should be a place to begin litigation. After a party has his day in court, with opportunity to present his evidence and his view of the law, a collateral attack upon the decision as to jurisdiction there rendered merely retries the issue previously determined. There is no rea-

son to expect that the second decision will be more satisfactory than the first. *Id.* at 172, 59 S.Ct. at 138.

In *Durfee v. Duke,* 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963), after reviewing the relevant authorities, the court stated the rule as to the applicability of the full faith and credit doctrine as follows:

> However, while it is established that a court in one State, when asked to give effect to the judgment of a court in another State, may constitutionally inquire into the foreign court's jurisdiction to render that judgment, the modern decisions of this Court have carefully delineated the permissible scope of such an inquiry. From these decisions there emerges a general rule that a judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment.

*Id.* at 111, 84 S.Ct. at 245.

The rule laid down in *Durfee* has already been cited with approval by the Eastern Section of this Court in the case of *Atchley v. Atchley,* 585 S.W.2d 614 (Tenn.Ct.App. 1978), *cert. denied* (1979). Applying the law to the case *sub judice,* we are of the opinion that the Texas judgment entered March 21, 1979, which found that the Texas courts had *in personam* jurisdiction over the defendant, is entitled to full faith and credit in Tennessee.

The defendant made a special appearance in the Texas court for the specific purpose of litigating the question of jurisdiction over his person. If he had chosen not to appear at all in Texas, which was his privilege, and the Texas court had rendered a default judgment, defendant could have raised the issue of *in personam* jurisdiction in our courts as the issue would not have been previously litigated. Having elected to contest the jurisdiction question in Texas, defendant had the right to appeal the adverse ruling to the appellate courts of that state, which he also chose not to do.

Under the circumstances, it is too late for the defendant now to seek relief from the courts of this state on the question of jurisdiction. Our hands are tied. The same can be said about this defendant as about a famous son of Tennessee, Davie Crockett—"He shouldn't have gone to Texas"!

For the reasons stated herein, the judgment of the circuit court is affirmed. Costs in this cause are taxed to the defendant, for which execution may issue, if necessary.

NEARN, P.J. (W.S.), and JOE G. RILEY, Jr., Special Judge, concur.