IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 7, 2003

## TARECO PROPERTIES, INC. v. STEVE MORRISS

**Appeal from the Chancery Court for Williamson County**
**No. I-26593      R. E. Lee Davies, Chancellor**

---

**No. M2002-02950-COA-R3-CV - Filed November 18, 2004**

---

The assignee of a judgment rendered by a federal district court in Texas attempted to enforce that judgment in Tennessee. The trial court entered an order granting summary judgment to the plaintiff and enforcing the judgment. The defendant subsequently filed a Tenn. R. Civ. P. 60 motion for relief, arguing that the judgment of the federal court was void. The trial court agreed and set aside its previous order. After the Texas federal court that had rendered the original judgment reached the opposite conclusion, the plaintiff filed a Tenn. R. Civ. P. 60 motion asking the trial court to set aside its earlier order setting aside the summary judgment enforcing the Texas judgment. The trial court denied this motion. By final order, the trial court dismissed the plaintiff's action to enforce the Texas judgment. We reverse the trial court on this issue and also vacate the order of expungement granted to Mr. Morriss related to a holding of criminal contempt.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the**
**Chancery Court Reversed in Part and Vacated in Part**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

Jeffrey A. Greene, Daniel W. Small, Nashville, Tennessee, for the appellant, Tareco Properties, Inc.

John Konvalinka, Chattanooga, Tennessee; Roger Reid Street, Jr., Franklin, Tennessee, for the appellee, Steve Morriss.

### OPINION

### I. PROCEEDINGS IN TEXAS - THE JUDGMENT

This case began with a complaint filed in 1987 by the Tesoro Savings & Loan Association in state court in Webb County, Texas. The defendants were a real estate partnership named Gold Park Development Partnership and fifteen named individuals who were all general partners in the Gold Park entity. Steve Morriss was both a general partner and the managing partner of Gold Park.

The complaint arose from a loan that the Tesoro Bank had made to Gold Park. Mr. Morriss and the other general partners had guaranteed the loan, but had failed to repay it. The bank subsequently went into receivership, and the Federal Deposit Insurance Corporation (FDIC) took over its assets. The case was eventually restyled with the FDIC as plaintiff.

On January 17, 1992, the FDIC filed a notice of removal of the case from state court to federal court.[1] On May 28, 1993, the United States District Court for the Southern District of Texas granted summary judgment to the FDIC and entered a final judgment against Gold Park and the six remaining individual defendants, holding them jointly and severally liable on the debt in the amount of $1,939,051.36 plus prejudgment interest and postjudgment interest at the rate of 3.54% per annum.

In 1999 the FDIC assigned the judgment ("1993 Texas judgment") by sale to another entity and, after other transfers, it was sold to the plaintiff in the case before us, Tareco Properties, Inc, ("Tareco") a California corporation.

## II. PROCEEDINGS IN TENNESSEE

Other judgments had been entered by Texas courts against Mr. Morriss stemming from failed real estate development projects. In the early 1990s, Mr. Morriss was living in California. In 1990 he met Mr. Corliss, a neighbor who was an attorney. He stated in sworn filings that in 1993,[2] he hired the California law firm of his neighbor, Corliss & Geringer, to attempt to settle, resolve, or "workout" debts and several judgments that existed against Mr. Morriss, specifically including the one that is the basis of the action before us.

Mr. Morriss moved to Middle Tennessee. He became involved in a number of real estate development projects in this state and elsewhere. In a number of those projects, Mr. Geringer and Mr. Corliss, the attorneys in California, and another Californian, Mr. Pressman, among others, were also involved as investors, partners, or principals.

Problems arose in these development projects. In 1999 Mr. Morriss and others, including various entities he had created, sued Mr. Corliss, Mr. Geringer, Mr. Pressman, and others over these business enterprises in the Chancery Court of Williamson County. Other suits between these groups

---

[1] A Memorandum and Order of the United States District Court for the Southern District of Texas states that the case was removed to federal court in December of 1988, that it was remanded to state court in September of 1990, and that it was removed again in January of 1992. After the second removal, the FDIC filed a motion, which was granted, to dismiss nine of the fifteen individual defendants from the case because they had placed themselves under the protection of the United States Bankruptcy Court.

[2] While Mr. Morriss most frequently refers to the time he retained these lawyers as "in or around" 1993, he also stated that he hired this firm "beginning as early as 1992" to represent him in various capacities. In testimony in federal court, he testified he first started dealing with the law firm in 1991.

of parties followed, both in state and federal court. With this backdrop of litigation, the case now under appeal was begun.

In October of 1999, Tareco began collection activities against Mr. Morriss in both state and federal courts in Tennessee.[3] The present complaint was filed in the Chancery Court of Williamson County and named Mr. Morriss as the sole defendant. Tareco asked the court to enforce the 1993 Texas judgment and to enjoin Mr. Morriss from transferring any property that might be available to satisfy that judgment to a third party for less than full consideration. Tareco furnished the court with a list of entities owned or controlled by Mr. Morriss, including thirteen in Texas and fifteen in Tennessee.[4] The court granted Tareco the temporary restraining order it sought, followed in short order by a preliminary injunction.

Mr. Morriss responded to the complaint with motions for a protective order to prevent his deposition and for relief from judgment under Tenn. R. Civ. P. 60.02. He also answered and asserted a counterclaim against Tareco and six other parties. He asserted that the conduct of Tareco was illegal and that Tareco should be estopped from pursuing the relief it sought. He also asked the court to enjoin various parties from pursuing any of three different Texas judgments that had been rendered against him, including the one placed in issue by Tareco's complaint herein. Mr. Morriss argued that the trial court should deny full faith and credit to the 1993 Texas judgment and declare that judgment void, "at least in the hands of Tareco." The gist of all these filings was that Tareco and other parties, principally those who were involved in the pending litigation over business ventures, were conspiring to perpetrate a fraud on the court and to deprive Mr. Morriss of the financial ability to pursue his legal remedies.[5] This "web of deceit," including his former lawyer's alleged use of confidential information to Mr. Morriss's detriment, formed the basis of Mr. Morriss's claim of misconduct and fraud - not any fraud in the FDIC's initial securing of the 1993 Texas judgment.

---

[3] In addition to this action, on December 14, 1999, Tareco filed an action in the United States District Court for the Middle District of Tennessee to enforce and collect the 1993 Texas judgment, having begun federal collection efforts in October. *Tareco Properties v. Steve Morriss*, No. 3:99-1160.

[4] Some of those entities had virtually identical names, including First Center, Inc., a Texas corporation, Center First Capital, Inc., a Texas corporation, First Center Financial, a Texas corporation, First Center Aviation, Inc., a Texas corporation, First Center of San Antonio, Inc., a Texas corporation, First Center Development, L.P., a Tennessee limited partnership, First Center Project Management, L.L.C., a Tennessee limited liability company, First Center Group, Inc., a Tennessee Corporation, First Group, Inc., a Tennessee corporation, and First Center Financial of Tennessee, Inc., a Tennessee corporation.

[5] This assertion was based on a theory that Tareco and another entity were formed for the sole purpose of buying and enforcing judgments against Mr. Morriss, including the 1993 Texas judgment against Gold Park Development and its partners. Mr. Morris alleged that the California attorneys that he had originally hired to work out these debts, and who later participated in several projects with Mr. Morriss, informed another attorney of the judgments against him. He alleges this third attorney (and others) formed Tareco and purchased the subject judgment after Mr. Morriss's initiation of litigation against his former attorneys, investors, and partners.

In response to a motion by Tareco and after a hearing, the trial court dismissed Mr. Morriss's motion for relief from judgment and his counterclaim. Later, on January 4, 2001, the court granted Tareco summary judgment on its request to enforce the 1993 Texas judgment. Specifically, the court held, "there is no basis in the record to support defendant's assertion that Tareco does not own the rights to the F.D.I.C. judgment on which this action is based." The court entered judgment against Mr. Morriss in favor of Tareco for $2,712,582.78.

Meanwhile, on May 8, 2000, Tareco had filed a motion for civil and/or criminal contempt. Tareco alleged that, among other violations of the court's injunction, Mr. Morriss had transferred $350,000 from a company that he controlled to a bank account in the name of his daughter, Amy Morriss.

Although the court continued the contempt hearing to give the defendant's appointed counsel time to prepare, it found that, given the nature of the case as an action on a foreign judgment, there was no just reason for delay of entry of a final judgment, notwithstanding the contempt proceedings or other collection actions. *See* Tenn. R. Civ. P. 54.02. Mr. Morriss did not appeal this final judgment.

The court ultimately found Mr. Morriss to be in contempt, sentenced him to ten days in jail (eight suspended), and ordered him to pay Tareco $8,400 for the fees and expenses incurred as a result of the contempt hearing. He served the two days, but the monetary penalty was apparently never paid.

### III. THE TENNESSEE COURT RECONSIDERS

Abandoning his conspiracy defense, and with new counsel,[6] on June 19, 2001, Mr. Morriss filed a motion under Tenn. R. Civ. P. 60.02 to set aside the trial court's judgment of January 4, 2001. Although Mr. Morriss moved to set aside the trial court's January 4, 2001 order granting judgment on the 1993 Texas judgment, his request for relief was based on his argument that the 1993 Texas judgment was itself void.

Mr. Morriss claimed that the 1993 Texas judgment was void because he was never served with any papers in the federal litigation and, consequently, the federal court did not have personal jurisdiction over him. This was clarified to explain that he had been served with process when the suit was originally filed in state court and had filed an answer. The FDIC intervened in the state court action and removed it to federal court. Mr. Morriss claimed he was not served with any of the papers filed in federal court, including the January 17, 1992 notice of removal and the FDIC's

---

[6]Mr. Morriss's original counsel in this action was granted permission to withdraw.

-4-

motion for summary judgment on which the final judgment was based, and that the record did not show service on him.[7]

The trial court reviewed the record in the underlying federal action,[8] as well as affidavits filed in support of and opposition to Mr. Morriss's motion to set aside, and found that Mr. Morriss was not represented by counsel during the relevant time period and ". . . Steve Morriss was not served with either the removal petition or motion for summary judgment and thus did not have notice of these proceedings." The court further held (1) Tennessee courts will refuse to give full faith and credit to a foreign judgment if the court entering it had no personal jurisdiction, (2) under federal law, failure to give notice of removal divests the federal court of jurisdiction, and (3) the requirements for notice of the filing of a motion for summary judgment are strictly enforced.

Accordingly, by order entered August 1, 2001, the court set aside its earlier judgment granting summary judgment to Tareco and entering judgment on the 1993 Texas judgment, finding that Mr. Morriss had been denied due process in the entry of the Texas judgment.[9] The trial court subsequently set aside its temporary injunction as well. The August 1, 2001, order was not certified as final pursuant to Tenn. R. Civ. P. 54.02. It is clear from the briefs and the record below that the parties and the trial court considered this order interlocutory and effecting only the setting aside of the summary judgment previously granted to Tareco, thus reopening the case.

## IV. FURTHER PROCEEDINGS IN TEXAS

While resisting the enforcement of the 1993 Texas judgment in Tennessee, Mr. Morriss also filed a Fed. R. Civ. P. 60(b) motion for relief from that judgment in the Texas federal court that had entered the judgment originally. In the motion in federal court Mr. Morriss argued, as he did in Tennessee state and federal courts,[10] that the Texas federal district court's 1993 order was void as

---

[7]After a hearing on July 9, 2001, the trial court dismissed two of the grounds asserted by Mr. Morriss. However, the trial court stayed proceedings, including ruling on the motion, to allow counsel to obtain the record from the action resulting in the 1993 Texas judgment because Tareco had asserted that Mr. Morriss was represented by counsel throughout the proceedings and Mr. Morriss had denied such representation.

[8]That record constitutes several volumes of the twenty-two volume technical record in this case.

[9]That order, however, contains no language finding the Texas judgment void.

[10]In the collection suit filed by Tareco in the U.S. District Court for the Middle District of Tennessee, Mr. Morris originally sought to prevent Tareco from enforcing the 1993 Texas judgment on the same basis as that alleged in his initial filings in the state court action, *i.e.,* that Tareco conspired with his former attorneys to make it financially impossible for him to pursue litigation. In the course of the federal action Mr. Morriss provided live testimony before the district court as well as affidavits and other sworn testimony, primarily relating to transfers and ownership of assets. His testimony resulted in his counsel striking Mr. Morriss's motion for relief, filing corrected testimony, and withdrawing from representation of Mr. Morris. It also resulted in the district court judge referring Mr. Morriss to the United States Attorney for possible prosecution for perjury.

(continued...)

to him because of lack of notice. Mr. Morriss's motion was filed in the United States District Court for the Southern District of Texas on June 28, 2001. Thus, this motion was filed shortly after the similar motion he filed in the Tennessee court, but before the Tennessee court ruled the Texas judgment was not entitled to full faith and credit.[11]

On March 28, 2002, seven months after the Tennessee court's ruling, the Texas federal court filed a Memorandum and Order[12] analyzing Mr. Morriss's lack of notice argument in detail and ultimately rejecting it.

The court traced the history of Mr. Morriss's appearances in the original case. He first filed a *pro se* answer in Texas state court on behalf of himself as well as the partnership. Shortly thereafter, amended pleadings were filed by a law firm the court referred to as the Martin firm. The court noted, "the subsequent relationship between this firm . . . and Morriss is the source of the instant dispute." Although the state court allowed the Martin firm to withdraw as counsel of record for Mr. Morriss in December of 1987, "a series of later filings by that firm, both before and after the 1992 removal, at least caused serious ambiguity as to whether the firm was purporting to represent this Defendant." The court detailed a number of filings where the firm signed as counsel for all defendants. Further, Mr. Morriss never filed anything during the five year pendency of the case to

---

[10](...continued)
With new counsel, in apparent abandonment of his conspiracy theory, and in response to motions by Tareco to sell certain of his assets and for contempt, Mr. Morriss entered into an agreed order, entered July 14, 2000, to transfer certain of his assets to Tareco for a $100,000 credit in partial satisfaction of the 1993 Texas judgment. The new counsel subsequently also withdrew. Almost a year after the agreed order was entered, with new counsel again, Mr. Morriss filed a Rule 60 motion in the Tennessee federal court action seeking to set aside the agreed order on the basis of mistake, inadvertence, surprise, or excusable neglect. Essentially, he asserted that the agreed order was a mistake because the 1993 Texas judgment was void because he had not been served with notice of removal and the FDIC's motion for summary judgment. By order entered July 31, 2001, the United States District Court for the Middle District of Tennessee denied Mr. Morriss's motion. He appealed that denial, and the Sixth Circuit affirmed the trial court. *Tareco Properties, Inc. v. Morriss,* 321 F.3d 545 (6th Circuit 2003).

In his appeal, Mr. Morriss's argument was that the 1993 Texas judgment was void. The Sixth Circuit held that, even if that claim were true, Mr. Morris had been aware of the service deficiencies he now claimed at the time he entered into the agreed order. Therefore, he could have litigated those issues before agreeing to the order, and a strategic error does not constitute grounds for relief from judgment under Rule 60. *Id.*, 321 F.3d at 549. Further, the court noted that the United States District Court for the Southern District of Texas had recently rejected Mr. Morriss's lack of service challenges to the 1993 Texas judgment, and the fact that he had appealed that decision did not bring his claim within the Rule 60 provision for relief where a prior judgment has been reversed or is otherwise vacated. *Id.*

[11]It is not clear from the record before us that the trial court was ever informed of this filing in the court whose judgment was being attacked before the Tennessee court entered its August 1, 2001 order ruling on the enforceability of that judgment.

[12]The court accepted the magistrate judge's recommendation that the motion be denied after Mr. Morriss objected to the magistrate's report and recommendation. The magistrate judge's report includes an exhaustive review of the record from the 1993 Texas judgment and a thorough analysis of the issues.

declare his *pro se* status or to provide an address different from counsel's. "Morriss completely ignored his responsibility to keep the parties and the courts abreast of his alleged *pro se* status and his whereabouts." Therefore, the court concluded, it was entirely reasonable for the FDIC to believe that notice of removal given to the Martin firm constituted notice to Mr. Morriss. We note that the magistrate judge's report pointed out that Mr. Morriss had appeared as the managing partner of Gold Park and there is no dispute Gold Park was served with all the pleadings and was represented by counsel throughout.

Secondly, the court held that a failure to provide notice of removal, even if it occurred, does not affect the federal court's fundamental authority to adjudicate the case. It is not tantamount to failure to serve original process, does not affect the court's subject matter and personal jurisdiction, and is subject to waiver. The function of a notice of removal is to afford parties the opportunity to object, and Mr. Morriss would have had no basis for any objection since the case was removed pursuant to a federal statute, 12 U.S.C. § 1819, that creates federal question jurisdiction over any suit to which the FDIC is a party. Accordingly, the court rejected Mr. Morriss's argument that lack of notice of removal, if there were such a defect, would void the subsequent judgment of the federal court without a showing of prejudice.

The court found the summary judgment issue more problematic, however. First, the record showed that in a status report filed on December 24, 1992, the FDIC described the parties represented by the Martin firm and Mr. Morriss was not one of the parties listed. The FDIC advised the court that Mr. Morriss was proceeding *pro se* but had not furnished a mailing address. However, when the disputed motion for summary judgment was filed a few weeks later, the certificate of service did not reflect a separate mailing to Mr. Morriss.

Concerned about this "lapse," the court nonetheless determined that Mr. Morriss was not entitled to relief under Rule 60(b) because that rule must be construed to do "substantial justice" and that "the concept of void judgments should be narrowly construed in the interest of finality," citing *Carter v. Fenner*, 136 F.3d 1000 (5th Cir. 1998).

The court concluded that Mr. Morriss's effort to set aside the 1993 Texas judgment was unrelated to any attempt at substantial justice, but instead was "a belated effort to find an escape from a judgment for which this Defendant is unquestionably liable." The court stated that none of the partners had presented any legitimate defense to the action on the documents, signed by each partner, guaranteeing the partnership's note. No partner appealed the judgment. The court found that Mr. Morriss's liability was likely fixed by Texas law making partners liable for partnership obligations and specifically providing that a judgment against a partnership may also be entered "against a partner who has been served with process in a suit against the partnership." Since Mr. Morriss was served with process in the case, he was liable on the judgment against the partnership, regardless of a judgment against him personally. The court further found that even now Mr. Morriss had made no meaningful indication of what legitimate defense he would offer if the case were reopened.

The court further found that it was abundantly clear from the record that Mr. Morriss had known about the 1993 Texas judgment since at least 1995, contrary to his protestations of ignorance until 1999. When he first attacked the judgment in Tennessee in 1999, he argued a basis other than the one he now claimed. Further, six months later, he entered into an Agreed Order in the United States District Court for the Middle District of Tennessee to turn over assets to Tareco in partial satisfaction of the 1993 Texas judgment. Such conduct can constitute a waiver of the right to raise a new ground later or, at the least, make any subsequent Rule 60(b) motion untimely. The court ended its thorough analysis of Mr. Morriss's motion with the following:

> To summarize, the instant case is one in which this Court clearly had federal subject matter jurisdiction and personal jurisdiction over this Defendant. Accordingly, the judgment cannot be considered "void" in the normal sense and can only be attacked on the basis that Defendant's due process rights were violated. The suit was to enforce a note made by a partnership of which the Defendant was a general, managing partner. He and the other partners signed guarantees for the note. Neither the partnership nor any of the other partners offered any colorable defense in this case, nor did they appeal. This Defendant is probably liable for the partnership judgment in any event. Whatever the true status of his relationship with the Martin firm, if Defendant was proceeding *pro se*, he apparently made no effort whatever to inform himself of the proceedings in the case nor to furnish any address at which he could be notified. Were this a case where the Court had granted summary judgment *sua sponte* without notice, and were the Defendant to thereafter perfect a direct appeal, the harmless error doctrine would apply, and he could not prevail without showing that he had some evidence to refute the summary judgment. *See Celestine v. Petroleos de Venezuela, SA*, 266 F.3d 343 (5th Cir. 2001); *Powell v. United States*, 849 F.2d 1576 (5th Cir. 1988). Under these circumstances, it is impossible to conclude that "substantial justice" requires the granting of this motion or that any legitimate due process right of this Defendant was violated. *Cf. Freeman v. City of Dallas*, 186 F.3d 601, 606-607 (5th Cir. 1999) ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands" (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L.Ed.2d 484 (1972)); *Merriman v. Security Ins. Co. of Hartford*, 100 F.3d 1187, 1191 (5th Cir. 1996) (noting that sufficiency of notice is a "fact-intensive inquiry"). The motion is therefore, DENIED. Out of an abundance of caution, however, the Court shall allow this Defendant until April 9, 2002 to seek reconsideration of this ruling if he can articulate, with specific factual elaboration and supporting authorities, what defense he would have offered to the 1993 summary judgment motion.

Mr. Morriss apparently did not take advantage of the opportunity provided by the court. Instead, he appealed this decision on April 12, 2002. On March 18, 2003, the United States Court of Appeals for the Fifth Circuit affirmed the trial court's denial of Mr. Morriss's request for relief from the 1993 Texas judgment. *Tesoro Savings & Loan v. Gold Park Development*, No. 02-40814, 2003 WL 1529269 (5th Cir. March 18, 2003). The appellate court rejected Mr. Morriss's argument

that the federal trial court was required to give preclusive effect to the "prior interlocutory order" of the Tennessee trial court[13] and stated:

> Morriss has failed to convince us that we are required to give preclusive effect to the findings of the Tennessee Chancery Court - findings in a tentative order that merely reversed a grant of summary judgment against Morriss without conclusively adjudicating the rights of the parties.

The court went on to find that Mr. Morriss had failed to establish that he did not receive actual notice of the removal or motion for summary judgment, regardless of any defects in service or proof of service. The court found this failure fatal to Mr. Morriss's Rule 60(b)(4) request for relief because "without such a showing Morriss cannot establish the existence of a procedural error of constitutional significance or any meaningful prejudice against him."

The Fifth Circuit also agreed with the district court that any lack of notice was due primarily to Mr. Morriss's failures to keep up with the case or to keep the court informed of his status and his address. Accordingly, the court held Mr. Morriss could not now complain that any failure to serve him amounted to a prejudicial constitutional error. "Morriss cannot reap a windfall from circumstances for which he is ultimately responsible."

## V. SUBSEQUENT PROCEEDINGS IN TENNESSEE

A few weeks after the ruling by the U.S. District Court in Texas, on April 12, 2002, Tareco again moved the Tennessee court for summary judgment to enforce the 1993 Texas judgment. In an order dated July 12, 2002, the court denied Tareco's motion. In that order, the court recounted its earlier decision that Mr. Morriss had not been given the required notice in the original lawsuit and stated that its August 1, 2001, order "concluded, therefore, that the FDIC Judgment is not entitled to full faith and credit." The court noted that, after its August 1, 2001 order, Tareco had filed a motion to reconsider "asserting that Mr. Morriss did receive notice of the removal and the motion for summary judgment because he was represented by one or more of the attorneys listed on the certificates of service." The court noted that Tareco again filed a great deal of documentation in support of its motion to reconsider[14] and that the court had denied the motion for reconsideration on September 12, 2001.

_____

[13] In his appeal of the decision of the U.S. District Court for the Middle District of Tennessee denying his motion for relief from the agreed order to partially satisfy the 1993 Texas judgment, Mr. Morriss asked to be allowed to supplement the record with copies of the orders of the Chancery Court for Williamson County denying full faith and credit to the 1993 Texas judgment. The Sixth Circuit denied that motion because the resolution of the issue on appeal was not impacted by the Tennessee state court orders. Additionally, the court stated, "Furthermore, the Tennessee state court orders do not 'reverse or otherwise vacate' the 1993 judgment from the Texas federal court . . . ." *Tareco Properties, Inc. v. Morriss*, 321 F.3d at 449-50.

[14] Specifically, the court stated the materials supporting the motion included "a 28-page supporting brief with 21 pages of attachments, nearly 500 pages of deposition transcripts and exhibits, 22 pleadings (more than 100 pages) from the Texas action, and two more affidavits with a total of 27 exhibits."

In addition, the court discussed the March 29, 2002, order entered by the Texas court, stating that that court had found that Mr. Morriss was represented by legal counsel at the times the FDIC filed its notice of removal and its motion for summary judgment and that Mr. Morriss received service of those papers by virtue of service on his attorneys.[15] The trial court stated that the motion filed by Tareco:

> takes the position that the Texas federal court's decision gives rise to an estoppel establishing, as a matter of law, Tareco's entitlement to enforce the FDIC Judgment against Mr. Morriss in this Court. The court finds and concludes, however, that the opposite is true - that this Court's decision of August 1, 2001, collaterally estops Tareco from seeking to enforce the judgment, at least in the courts of this state.

As a basis for this conclusion, the trial court held that its August 1, 2001, order was final for collateral estoppel or issue preclusion purposes even though it was not final for *res judicata* purposes and was not a final judgment subject to appeal. The court explained the difference in "finality" for both purposes, relying on the Restatement (Second) of Judgments Sections 13 and 14. Because the court had "adequately deliberated" the issue of service on Mr. Morriss, and because the court's conclusions were "firm" and not "avowedly tentative," the trial court held that its previous order was final for collateral estoppel purposes. Consequently, the court held, the subsequent decision by the United States District Court for the Southern District of Texas had no preclusive effect on its previously entered order. The court relied on *Cycles, Ltd. v. Navistar Fin. Corp.*, 37 F.3d 1088 (5th Cir. 1994), which held, *inter alia*, "Case law supports our conclusion that a court is not compelled to revise its fully litigated decision by later inconsistent decisions of other courts." 37 F.3d at 1090-91.

The trial court held that the issue of whether Mr. Morriss had been served with the notice of removal and motion for summary judgment had been litigated before it a year earlier and, therefore, Tareco was collaterally estopped from relying on the subsequent federal court decision that reached a contrary result. Tareco filed two motions to alter or amend.

The final order was entered November 11, 2002. In it, the court denied Tareco's motion for summary judgment and its motions to alter or amend and granted Mr. Morriss's cross motion for summary judgment. The court repeated its conclusion that the 1993 Texas judgment was not entitled to full faith and credit because Mr. Morriss had not been served with notice of the removal of the

---

[15]The trial court also noted that Mr. Morriss had appealed the decision of the district court. At this time, the appellate court had not ruled.

original case to federal court or of the summary judgment motion filed by the FDIC.[16]  The court dismissed Tareco's action to enforce the judgment.  Tareco filed a timely notice of appeal.

On November 18, 2002, Mr. Morriss applied to have the record of his criminal contempt expunged.  The trial court granted the motion, and Tareco filed a Notice of Appeal with respect to the order of expungement as well.  On May 19, 2003, this court directed that the two appeals filed by Tareco be consolidated.

## VI. ENFORCEMENT OF THE 1993 TEXAS JUDGMENT

Regardless of the long and winding road this case has taken on its way to our door, the order before us on appeal is the trial court's November 11, 2002, final order denying full faith and credit to the 1993 Texas judgment and dismissing Tareco's action to enforce that judgment.  It is that order we must review.

Tareco initiated this action by filing a complaint to enforce the 1993 Texas judgment pursuant to Tenn. Code Ann. § 26-6-101 *et. seq.*, the Uniform Enforcement of Foreign Judgments Act ("Act").  Under that Act, an authenticated foreign judgment properly filed may be enforced after it has been on file for thirty days and the judgment debtor does not show that the judgment is on appeal, has been stayed, or there exists a ground for a stay.  Tenn. Code Ann. § 26-6-105 & -106; *Bailey v. Sneed*, 49 S.W.3d 327, 329 (Tenn. Ct. App. 2001).  A foreign judgment so filed may be enforced or satisfied in the same way as a judgment of a court of this state.  Tenn. Code Ann. § 26-6-104(c).  A foreign judgment is "any judgment, order, or decree of a court of the United States or of any other court which is entitled to full faith and credit in this state."  Tenn. Code Ann. § 26-6-103.

A foreign judgment filed pursuant to the Act "has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of a court of record in this state and may be enforced or satisfied in a like manner."  Tenn. Code Ann. § 26-6-104(c).  Consequently, the grounds and procedures for vacating, reopening, or setting aside a foreign judgment are those set out in Tenn. R. Civ. P. 60.02.  *Remington Investments, Inc. v. Obenauf,* 1 S.W.3d 666, 668 (Tenn. Ct. App 1999); *Bailey*, 49 S.W.3d at 329; *Coastcom, Inc. v. Cruzen*, 981 S.W.2d 179, 181 (Tenn. Ct. App. 1998); *Biogen Distributors, Inc. v. Tanner*, 842 S.W.2d 253, 256 (Tenn. Ct. App. 1992).

---

[16]In rejecting another argument made by Tareco based on language in the federal court's decision upholding the 1993 Texas judgment, the court also held that under Texas law, a judgment against a partnership can be enforced against a partner only if a judgment against the partner is also entered in the same case.  The court found no valid judgment had been entered against Mr. Morriss because of the failure to serve him.  "While process was served on Mr. Morriss in the Texas state court litigation prior to its removal to the federal court, the notice of removal - tantamount to the service of process necessary to bring Mr. Morriss within the personal jurisdiction of the federal court consistent with the requirements of due process - was not served on Mr. Morriss."

Rule 60.02 of the Tennessee Rules of Civil Procedure provides, in pertinent part:

On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken.

Relief under Rule 60.02 is considered "an exceptional remedy." *Nails v. Aetna Ins. Co.*, 834 S.W.2d 275, 294 (Tenn. 1992). The function of the rule is "to strike a proper balance between the competing principles of finality and justice." *Banks v. Dement Constr. Co., Inc*., 817 S.W.2d 16, 18 (Tenn. 1991) (quoting *Jerkins v. McKinney*, 533 S.W.2d 275, 280 (Tenn. 1976)). Rule 60.02 acts as an "escape valve from possible inequity that might otherwise arise from the unrelenting imposition of the principle of finality imbedded in our procedural rules. . . ." *Banks*, 817 S.W.2d at 18 (quoting *Toney v. Mueller Co.*, 810 S.W.2d 145, 146 (Tenn. 1991)). Because of the importance of finality, the "escape valve" should not be easily opened. *Id.*

The ground asserted in Mr. Morriss's motion was that the 1993 Texas judgment was void. The standard for determining whether a judgment is void is well settled: whether the court had general jurisdiction of the subject matter, whether the judgment was wholly outside the pleadings, and whether the court had jurisdiction of the parties. *Gentry v. Gentry*, 924 S.W.2d 678, 680-81 (Tenn. 1996). Absent such a *prima facie* void decree, "a flaw in procedure" will not render a decree void. *Id*. at 681. Such an order is merely voidable or is valid.

The party seeking relief under Rule 60.02 has the burden of showing grounds therefor and entitlement to relief. *Spruce v. Spruce*, 2 S.W.3d 192, 194 (Tenn. Ct. App. 1999); *Howard v. Howard*, 991 S.W.2d 251, 255 (Tenn. Ct. App. 1999); *Davidson v. Davidson*, 916 S.W.2d 918, 923 (Tenn. Ct. App. 1995). The movant must substantiate entitlement to the request by clear and convincing evidence. *Davidson*, 916 S.W.2d at 923; *Duncan v. Duncan*, 789 S.W.2d 557, 563 (Tenn. Ct. App. 1990).

Similarly, a party seeking to have a court of this state deny full faith and credit to a judgment from another jurisdiction has the burden of demonstrating why the court should refuse to enforce the foreign judgment. Parties seeking to undermine the validity of a foreign judgment have a "stern and heavy" burden. *Coastcom*, 981 S.W.2d at 181; *Biogen Distributors*, 842 S.W.2d at 256.

That is because judgments from other jurisdictions are generally entitled to full faith and credit in the courts of this state pursuant to Article IV, Section 1 of the United States Constitution.

*Hart v. Tourte*, 10 S.W.3d 263, 269 (Tenn. Ct. App. 1999); *Biogen Distributors,* 842 S.W.2d 759 at 760; *Four Seasons Gardening & Landscaping, Inc. v. Crouch*, 688 S.W.2d 439, 442 (Tenn. Ct. App. 1985). Under the Act, the courts of this state will presume, absent proof to the contrary, that judgments from other jurisdictions are valid. *Four Seasons Gardening*, 688 S.W.2d at 441-42.[17] Although final judgments of courts of other jurisdictions are ordinarily conclusive, courts of this state are not required to afford them full faith and credit in a limited number of circumstances. *Hart*, 10 S.W.3d at 269; *Four Seasons Gardening*, 688 S.W.2d at 442; *Benham*, 650 S.W.2d at 760.

One of those situations is where the court rendering the judgment lacked subject matter jurisdiction or personal jurisdiction over the parties. *Topham v. L.L.B. Corp*., 493 S.W.2d 461, 462 (Tenn. 1973); *Hart*, 10 S.W.3d at 269; *Biogen Distributors*, 842 S.W.2d at 256. In that situation, the foreign judgment is void and not entitled to full faith and credit in this state. *Benham,* 650 S.W.2d at 761. It has also been stated that courts of this state are not required to afford a foreign judgment full faith and credit if the judgment was entered in violation of the United States Constitution, which includes the denial of due process. *In re Riggs*, 612 S.W.2d 461, 465 (Tenn. Ct. App. 1980).[18]

The duty of the courts of this state is to give such effect to a foreign judgment as would the courts of the jurisdiction where the judgment was entered. *Graybar Electric Co. v. New Amsterdam Casualty Co.,* 186 Tenn. 441, 451, 211 S.W.2d 903, 904-05 (Tenn. 1948); *Biogen Distributors*, 842 S.W.2d at 256; *Four Seasons Gardening*, 688 S.W.2d at 442. That is what full faith and credit means. *Bailey*, 49 S.W.3d at 329. "Therefore, when the judgment is attacked here, the focus should be on what effect the attack would have in the forum that rendered the judgment." *Id*. at 330. Thus, when the jurisdiction of the rendering court over the parties is attacked, we must look to the law of the jurisdiction issuing the judgment. *Four Seasons Gardening*, 688 S.W.2d at 442. The party challenging the foreign judgment must demonstrate that the court issuing it did not acquire jurisdiction under the laws applicable in that forum. *Biogen Distributors*, 842 S.W.2d at 256.

When determining whether a foreign judgment is entitled to full faith and credit, courts of this state may constitutionally inquire into the jurisdiction of the rendering court. *Abernathy v. Chambers,* 482 S.W.2d 129, 132 (Tenn. 1972); *Harris v. Poole*, 688 S.W.2d 78, 81 (Tenn. Ct. App. 1984). However, when a foreign judgment is attacked, courts of this state should first examine

_____

[17]When an authenticated judgment that was rendered in a foreign state is presented to a court of this state for enforcement, the Tennessee court may not go behind the judgment and review the merits of the underlying dispute. *Hart,* 10 S.W.3d at 269*; Remington Investments,* 1 S.W.3d at 669; *Benham v. Fisher,* 650 S.W.2d 759, 760 (Tenn. Ct. App. 1983). Mr. Morriss did not seek to relitigate the merits underlying the judgment. To the contrary, as the federal courts pointed out, he has not even made a factual claim that he has a meritorious defense to the judgment should it be reopened.

[18]Additionally, Tennessee follows the rule that it will not enforce a foreign judgment when to do so would violate a strong public policy of this state. *Biogen Distributors*, 842 S.W.2d at 256; *Four Seasons Gardening*, 688 S.W.2d at 442; *In re Riggs*, 612 S.W.2d at 469. However, the only case we have found where the public policy of Tennessee was invoked to deny enforcement of a foreign judgment was *In re Riggs*, which involved a Georgia adoption order entered without any notice or service of process on the biological father. The public policy at stake was the protection of the parent-child relationship. We can find no strong public policy of this state that would be implicated in an attempt to enforce a judgment on a debt.

whether the issue raised in the attack has been fully and fairly litigated in the court rendering the judgment because "a judgment is entitled to full faith and credit - - even as to questions of jurisdiction - - when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court that rendered the original judgment." *Abernathy*, 482 S.W.2d at 132, quoting *Durfree v. Duke*, 375 U.S. 106, 84 S.Ct. 242 (1963); *Graybar Electric Co.*, 186 Tenn. at 451, 211 S.W.2d at 904-05.

Consequently, if the challenges to the foreign judgment involve issues that have been fully and fairly litigated in the court rendering the original judgment and finally decided in that court, its judgment on that question would also be entitled to full faith and credit and would be *res judicata* as to any subsequent attempt to relitigate those issues. *Abernathy,* 482 S.W.2d at 132; *Coastcom*, 981 S.W.2d at 181; *Harris*, 688 S.W.2d at 81.

In the case before us, the federal court that issued the original 1993 Texas judgment has considered the exact issues raised by Mr. Morriss in Tennessee. Those issues include some uniquely federal questions, such as the requirements for removal. The federal district court considered its jurisdiction, the due process claims, and Mr. Morriss's entitlement to relief under Fed. R. Civ. P. 60.02, all under federal law. While those issues were not litigated in the original action, and the federal district court's decision on them was not made before the Tennessee trial court made its interlocutory ruling on them, the Texas decision was final before the Tennessee court entered its final judgment.

Tareco argues that the Texas federal court's order of March 29, 2002, was final for purposes of *res judicata* and, therefore, binding on the Tennessee trial court when it entered its final judgment. We agree, for reasons explained below.

Mr. Morriss argues that the Texas federal court's decision upholding the validity of the 1993 Texas judgment was not binding on the Tennessee trial court because "the first judgment on an issue prevails over a later judgment on the issue." To support this proposition, Mr. Morriss relies on a portion of the Restatement (Second) of Judgments that states that neither the date of the commencement of an action, nor the relative timing of the initiation of two actions involving the same matter, affects the *res judicata* effect of a judgment. He quotes from the Restatement:

> For purposes of res judicata, the effective date of a final judgment is the date of its rendition, without regard to the date of commencement of the action in which it is rendered or the action in which it is to be given effect.
>
> ***
>
> . . . In order that a final judgment shall be given res judicata effect in a pending action, it is not required that the judgment shall have been rendered before that action was commenced. Nor is a judgment, otherwise entitled to res judicata effect in a pending action, to be deprived of such effect by the fact that the action in which it

was rendered was commenced later than the pending action. It is merely required that rendition of the final judgment shall antedate its application as res judicata in the pending action. Thus when two actions are pending which are based on the same claim, or which involve the same issue, it is the final judgment first rendered in one of the actions which becomes conclusive in the other action (assuming any further prerequisites are met), regardless of which action was first brought.

Restatement (Second) of Judgments §14 cmt. a.

Additionally, Mr. Morriss argues, that when there are two inconsistent judgments, although the later one usually prevails in a third action between the parties, where one of the conflicting results was reached by a court of the state in which the current action is pending, that same-state decision prevails over an inconsistent judgment from another jurisdiction. Consequently, Mr. Morriss argues, the Tennessee trial court's August 1, 2001 order prevails over the later Texas district court judgment upholding the 1993 Texas judgment.

The problem with these arguments is that the August 1, 2001 order issued by the trial court was not a final judgment. It was an interlocutory order setting aside the summary judgment previously awarded to Tareco. As Mr. Morriss himself quotes from the Restatement, "The rules of res judicata are applicable only when a final judgment is rendered." RESTATEMENT (SECOND) OF JUDGMENTS § 13.

The first final judgment entered on the issue of the validity of the 1993 Texas judgment was that of the Texas federal court in response to Mr. Morriss's Fed. R. Civ. P. 60(b) motion. It was entitled to *res judicata* effect, precluding Mr. Morriss from relitigating those claims and issues. His federal court motion was identical to the Tenn. R. Civ. P. 60.02 motion he filed in the trial court below. Mr. Morriss chose to bring the same issues before two different courts; he is bound by the decision of the first court rendering a final judgment. That result is especially appropriate since that judgment was rendered by the court whose original judgment was being attacked and was based upon law applicable to that forum.[19]

Mr. Morriss also argues that the trial court's August 1, 2001 order was properly given preclusive effect by the trial court because, even though it was not a "final" judgment subject to appeal, it met the finality requirements applicable to collateral estoppel. Mr. Morris makes the same argument, relying on the Restatement, that the trial court adopted in its July 12, 2002 order denying Tareco's motion for summary judgment to enforce the 1993 Texas judgment.

---

[19]As mentioned earlier, it is not apparent that either party informed the trial court herein of the pendency of the separate proceeding in Texas on the same question that he was asked to consider. With such notice, the court could have deferred action on the Rule 60 motion before it, pending the decision of the court that had rendered the judgment being challenged.

Collateral estoppel is an issue-preclusion doctrine. *Hampton v. Tennessee Truck Sales, Inc.*, 993 S.W.2d 643 (Tenn. Ct. App. 1999). Its basic tenet is that, "[o]nce an issue has been actually or necessarily determined by a court of competent jurisdiction, the doctrine of collateral estoppel renders that determination conclusive on the parties and their privies in subsequent litigation, even when the claims or causes of action are different." *Gibson v. Trant*, 58 S.W.3d 103, 113 (Tenn. 2001), quoting *State ex rel. Cihlar v. Crawford*, 39 S.W.3d 172, 178 (Tenn. Ct. App. 2000). The purposes behind this court-devised doctrine include the prevention of inconsistent decisions. *Beaty v. McGraw*, 15 S.W.3d 819, 825 (Tenn. Ct. App. 1998).

The requirements for the successful invocation of the doctrine of collateral estoppel in Tennessee are well-settled. Among them is that "the judgment in the earlier suit has become final." *Beaty*, 15 S.W.3d at 825. *See also Oceanics School, Inc. v. Barbour*, 112 S.W.3d 135, 146 (Tenn. Ct. App. 2003); *Frank Rudy Heirs Assocs. v. Sholodge, Inc.*, 967 S.W.2d 810, 813 (Tenn. Ct. App. 1997); *Morris v. Esmark Apparel, Inc.*, 832 S.W.2d 563, 565 (Tenn. Ct. App. 1992).

Under Tennessee law, the trial court's August 1, 2001 order setting aside the summary judgment previously granted to Tareco and reopening the case was subject to revision at any time prior to entry of the judgment adjudicating all the claims and the rights and liabilities of all the parties. Tenn. R. Civ. P. 54.02. It was not a final judgment and, therefore, did not meet the requirements for the invocation and application of the doctrine of collateral estoppel. That interlocutory order did not preclude Tareco from litigating the issue of the validity of the 1993 Texas judgment or from submitting and relying upon the later Texas federal court judgment.

For all these reasons, we reverse the trial court's final order granting summary judgment to Mr. Morriss and refusing to enforce the 1993 Texas judgment. [20] We also reverse the trial court's

---

[20]The correct standard of review requires some discussion. The trial court's final order granted Mr. Morriss's motion for summary judgment. A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 284 (Tenn. 2001); *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000). This court's role in review of the grant of summary judgment is to review the record and determine whether the requirements of Tenn. R. Civ. P. 56 have been met. *Staples v. CBL & Associates, Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000). Those requirements are that the filings supporting the motion show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Fruge v. Doe*, 952 S.W.2d 408, 410 (Tenn. 1997); *Byrd v. Hall*, 847 S.W.2d 208, 210. The question presented was whether Mr. Morriss was entitled to relief from the Texas 1993 judgment. That issue is decided under procedures and grounds established in Tenn. R. Civ. P. 60.02. This court's review of a decision to grant or deny relief under Tenn. R. Civ. P. 60 is limited to whether the trial court abused its discretion. *Federated Ins. Co. v. Lethcoe*, 18 S.W.3d 621, 624 (Tenn. 2000); *Underwood v. Zurich Ins. Co.*, 854 S.W.2d 94, 97 (Tenn. 1993); *Ellison v. Alley*, 902 S.W.2d 415, 418 (Tenn. Ct. App. 1995). A trial court abuses its discretion when it applies an incorrect legal standard. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). On the other hand, another way to state the issue before the court was whether the 1993 Texas judgment was entitled to full faith and credit. That is a question of law, reviewed *de novo*. Similarly, the question of whether collateral estoppel applies is a question of law, as is the question of whether a prior judgment has *res judicata* effect. *See Morris*, 832 S.W.2d at 566. We have determined that Tareco was not collaterally estopped from litigating the issue of whether the 1993 Texas judgment was void and that the trial court was required to afford full faith and credit to that judgment under the doctrine of *res judicata*. These decisions on the underlying questions of law

(continued...)

order denying Tareco's motion for summary judgment and find that Tareco is entitled to enforce the 1993 Texas judgment pursuant to Tenn. Code Ann. §§ 26-2-101 *et seq*.

## VII. CONTEMPT

As we stated above, the trial court sanctioned Mr. Morriss for violating its injunction that he not transfer his assets to another party for less than full consideration. The court conducted a trial of the contempt charges and concluded that Mr. Morris was guilty of criminal contempt, specifically finding that he was guilty beyond a reasonable doubt of willfully disobeying the court's order. *See* Tenn. Code Ann. § 29-9-102(3). In an order dated January 17, 2002, the court sentenced him to ten days of incarceration, with eight days suspended, providing he not violate any order of the court in the future. The order also directed that Mr. Morriss pay $8,400 in attorneys fees and expenses that were incurred by Tareco as a result of its attorney serving as the prosecutor in the contempt case. Additionally, the order declared that "[a]fter the final termination of this case, the Defendant Steve Morriss's conviction shall be subject to expungement by the Court pursuant to the provisions of T.C.A. § 40-35-313." That statute sets out the procedures for expungement of the criminal records of first-time offenders who have been placed on probation and who have successfully completed the terms of their probation.

After the trial court's final disposition of this case in his favor, Mr. Morriss filed a motion to have his contempt conviction expunged. On December 5, 2002, the trial court entered an order expunging any public records relating to his conviction of criminal contempt, stating that it was taking this action "pursuant to the provisions of Tenn. Code Ann. § 40-32-101 et seq." The referenced statutes apply to a broader range of defendants than those benefitted by Tenn. Code Ann. § 40-35-313, including those who have been arrested and released without being charged, those whose charges have been dismissed, and those who have been found not guilty by a jury. The use of this statute indicates to us that once the court in this case found that it would not enforce the 1993 Texas judgment against Mr. Morriss it felt there was no longer any reason to punish him for his handling of his own assets.

Tareco appeals this order of expungement on the basis of Mr. Morriss's failure to comply with the original contempt order's provision that he pay $8,400 in attorney's fees and expenses, an argument relevant to Tenn. Code Ann. § 29-9-313 if the order to pay expenses is considered a form of probation.

Because neither the statutory basis for the expungement, Mr. Morriss's qualification for expungement under the applicable statute, nor the court's reasoning is clear, we vacate the expungement order. On remand, the court may consider Mr. Morriss's request in light of our holding herein if relevant to the court's decision.

---

[20](...continued)
lead to the conclusion that Mr. Morriss was not entitled to summary judgment as a matter of law.

## CONCLUSION

The judgment of the trial court is reversed, and the expungement order is vacated. The case is remanded to the Chancery Court of Williamson County for further proceedings consistent with this opinion. Costs on appeal are taxed to the appellee, Steve Morriss.

_____
PATRICIA J. COTTRELL, JUDGE